UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JASON MCMUNN and EDWIN MACDONALD,

                         Plaintiffs,

      -against-

QUOGUE VILLAGE POLICE DEPARTMENT and
VILLAGE OF QUOGUE, CHRISTOPHER ISOLA
and ROBERT COUGHLAN,

                        Defendants.
------------------------------------------------------------------X

**COMPLAINT**

*Jury Trial Demanded*

        Plaintiffs JASON MCMUNN and EDWIN MACDONALD by and through their attorneys, the BELL LAW GROUP PLLC, respectfully allege, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs Jason McMunn ("McMunn") and Edwin MacDonald ("MacDonald") (collectively "Plaintiffs") are American patriots who have served this great country both in the United States Military and as members of the Quogue Village Police Department ("QVPD"). Plaintiffs have simultaneously served these esteemed organizations with distinction in a true demonstration of service and patriotism.

2. Despite Plaintiffs' steadfast service to the Village of Quogue ("Village") and this country, the QVPD has discriminated against them on the basis of their military service. The QVPD and the Village have denied Plaintiffs promotions on the basis

        of their military service and subjected them to harassment, ridicule and further disparate treatment.

3. Plaintiff MacDonald was denied a single promotion during the entirety of his career, despite numerous openings that went to officers who were not in the military. MacDonald was subjected to further harassment and disparate treatment throughout the course of his employment.

4. Plaintiff McMunn was also subjected to constant harassment and disparate treatment on the basis of his military service. This harassment and disparate treatment culminated in in March 2019 when the QVPD denied Mr. McMunn a promotion to the position of Lieutenant, despite him being the most qualified candidate and scoring the highest on the civil service examination. Rather, the position went to a candidate with far less experience who scored lower on the exam, and who was not in the military.

5. The Defendants' discrimination against Plaintiffs McMunn and MacDonald on the sole basis of their military service is an afront to all veterans of the United States Armed Forces who have sacrificed and dedicated their lives to serving this great country. The Defendants' actions as set forth in this lawsuit were both unlawful and unpatriotic, and as such are a permanent stain on the Defendants' legacies and the QVPD.

6. In denying Plaintiffs McMunn and MacDonald promotions and further discriminating against them on the basis of their military service, Defendants violated and continue to violate the Uniformed Service Employment and

Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§4301-4335, warranting Plaintiffs' recovery of monetary damages.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 38 U.S.C. §§4301-4335.

8. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendants are located in Suffolk County, New York, which is located in the Eastern District of New York, and (2) the events which give rise to the Plaintiff's claims took place in Suffolk County, which is located in the Eastern District of New York.

## PARTIES

9. Plaintiff JASON MCMUNN ("McMunn") is a resident and domiciliary of Suffolk County, NY. At all times relevant to the Complaint, Plaintiff McMunn was an "employee" of Defendants.

10. Plaintiff EDWIN MACDONALD ("MacDonald") is a resident and domiciliary of Knox County, Maine. At all times relevant to the Complaint, Plaintiff MacDonald was an "employee" of Defendants.

11. Defendant QUOGUE VILLAGE POLICE DEPARTMENT ("QVPD") was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 115 Jessup avenue, Quogue, New York 11959. At all times relevant to the complaint, Defendant QVPD was Plaintiffs' "employer," as that term is defined by USERRA.

12. Defendant VILLAGE OF QUOGUE ("Village") was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 7 Village Lane, Quogue, New York 11959. At all times relevant to the complaint, Defendant Village was Plaintiffs' "employer" as that term is defined by USERRA.

13. Defendant CHRISTOPHER ISOLA ("ISOLA") was and still is a resident of the County of Suffolk, State of New York. At all times relevant to the complaint, Defendant Isola was Plaintiffs' "employer," as that term is defined by USERRA. Defendant is the current Chief of the QVPD.

14. Defendant ROBERT COUGHLAN ("Coughlan") was and still is a resident of the County of Suffolk, State of New York. At all times relevant to the complaint, Defendant Coughlan was Plaintiffs' "employer," as that term is defined by USERRA. Defendant Coughlan is the former Chief of the QVPD.

## FACTUAL ALLEGATIONS

A. <u>Jason McMunn</u>

*Background*

15. In September 1990, Plaintiff McMunn was hired by the QVPD and Village ("Village Defendants") as a police officer.

16. Plaintiff McMunn has served the Village Defendants with distinction and is currently employed as a Sergeant.

17. In 1991, Plaintiff McMunn joined the New York National Guard and has been periodically called up for service at varying intervals.

18. Plaintiff McMunn served as President of the Police Benevolent Association ("PBA") from 2001-2008, a further demonstration of his commitment to the Village Defendants.

19. Plaintiff McMunn's call ups have not impacted his job performance or negatively impacted the Village Defendants. Rather, Plaintiff McMunn's military training and experience has been an asset for the Village Defendants.

20. Despite Plaintiff McMunn's stellar job performance and steadfast service, the Defendants have subjected him to harassment and discrimination on the basis of his military service.

*Harassment on the Basis of Military Service*

21. Throughout the course of Plaintiff McMunn's employment with the Defendants, but more particularly after the terrorist attacks of September 11, 2001, Defendants commenced a campaign of harassment against McMunn due to his periodic leave for tours of service with the New York National Guard and New York National Guard reserves.

22. This harassment has been consistent for the past twenty (20) years and continues to this day. For example, on or about December 17, 2019, Defendant Isola told Sergeant John Galvin that his schedule was being changed due to Plaintiff McMunn's upcoming military leave. Galvin expressed his displeasure to Plaintiff McMunn that his schedule was being impacted by his military leave.

23. In May 2010, the Defendants denied some of the other members of the QVPD leave while Plaintiff McMunn was on military leave, which caused additional tension between Plaintiff McMunn and the members.

24. On May 6, 2011, officer Ethan Theune told Plaintiff McMunn that according to Defendant Coughlan, he had been denied overtime over the past several years because of Plaintiff McMunn's military service. This disclosure was clearly upsetting to Plaintiff McMunn.

25. In August 2011, Sergeant John Galvin filed a grievance against the QVPD alleging that he was improperly denied leave while Plaintiff McMunn was on military leave. The grievance was settled in 2013, and the Defendants agreed not to deny members leave simply because Plaintiff McMunn was on military leave.

26. In May 2013, Defendants Isola and Coughlan, who were both Plaintiff McMunn's supervisors, questioned Plaintiff McMunn's upcoming military leave orders, and accused him of "making them up" in his basement. Plaintiff McMunn suggested Isola and Coughlan call the National Guard to confirm his leave orders.

27. The harassment continued on a nearly daily basis, with events too numerous to count. For example, in May 2015, Defendant Isola suggested that Plaintiff McMunn use his vacation and sick leave when he was on military leave. Plaintiff McMunn rejected this suggestion and felt threatened by same.

28. On September 13, 2017 at a PBA meeting, Defendant Isola told the department that Defendant Coughlan had determined that "no way" would he support new shifts "while we have a reserve person." At the conclusion of the meeting, Mr. Theune approached Plaintiff McMunn and told him that he would be "submitting his resignation from the reserves" as he wanted the new expanded shifts.

29. Defendants Isola and Coughlan were aware that their actions and comments caused Plaintiff McMunn to be harassed by other members of the department, but

6

they took no action to remediate the harassment, and instead took actions to make it worse.

30. In March of 2018, Defendants Isola and Coughlan complained to members of the department that Plaintiff McMunn should not get leave for both the PBA and the military. Defendants Isola and Coughlan again showed their disdain for Plaintiff McMunn's military service and influenced the opinions of the members of the department.

31. In May 2018, Defendant Isola again told Plaintiff McMunn that he and Defendant Coughlan did not agree that his military leave should be approved. However, after repeated discussions, Defendants reluctantly approved Plaintiff McMunn's leave. Defendants Isola and Coughlan harassed Plaintiff McMunn every year when the issue of his military leave arose. This repeated harassment based on his military leave caused him great emotional distress.

32. On June 4, 2018, Plaintiff McMunn was in Defendant Isola's office, and was again questioned about his leave orders. Defendant Isola informed Plaintiff McMunn that he brought the issue of military leave to the Mayor's attention. Defendant Isola stated that he told the Mayor that military leave must be an "issue" if it was put on his recent Captains exam.

33. In August 2018, Defendant Isola conducted Plaintiff McMunn's annual performance review. During the review, Plaintiff McMunn brought up the potential of a promotion. Defendant Isola pushed back and inferred that Plaintiff McMunn's military service was an issue which would prevent him from getting a promotion. This warning subsequently came to fruition.

7

34. In the August 2018 meeting, Defendant Isola further harassed Plaintiff McMunn for his military service and stated that it was his belief that Plaintiff McMunn thought he was better than everyone else because of his military service.

35. On or about February 28, 2019, while inside the QVPD building, Defendant Isola told the members of the Department that the collective bargaining agreement should be changed so that military leave is not a carve out from vacation and other leave. Defendant Isola was again creating divisions between Plaintiff McMunn and other members of the department due to Plaintiff McMunn's military service.

36. Around this same time, Mr. Theune expressed anger at being assigned to work with Plaintiff McMunn because he could not take leave in May 2019 as a result of Plaintiff McMunn's upcoming military leave. Defendants Isola and Coughlan had successfully managed to turn the members of the department against Plaintiff McMunn due to his military service.

37. In January 17, 2020, Mr. Theune again confronted Plaintiff McMunn after being told that his request for leave was in limbo due to Plaintiff McMunn's upcoming military leave.

38. On or about April 3, 2020, Defendant Isola approached Plaintiff McMunn and told him that his military leave was a consideration for his allowance of Mr. Theune to take terminal leave. This was incorrect, and Plaintiff McMunn informed Defendant Isola that he was not going on leave, and even if he was, the QVPD had sufficient manpower to grant Mr. Theune's leave request. This was yet

8

another example of Defendants turning Plaintiff McMunn's co-workers against him due to his military service.

39. In June 2020, Plaintiff McMunn retained counsel to write a cease and desist letter to the QVPD, demanding that the harassment cease immediately.

40. These events are just a snapshot of the repeated harassment suffered by Plaintiff McMunn simply because he served in the military. This disgraceful harassment is a stain on the QVPD and dishonors Plaintiff McMunn's service to this country.

### *Denied Promotions*

41. Plaintiff McMunn was repeatedly denied promotions on the basis of his military service.

42. In 2003, Plaintiff McMunn's probationary period was improperly restarted by Defendant Coughlan and the QVPD due to his absence on a deployment. Defendant Coughlan and the QVPD also attempted to reverse Plaintiff McMunn's seniority, however this decision was reversed. During this dispute, Defendant Coughlan told Plaintiff McMunn that he was "ready to fight" to restart the probationary period and to change his seniority.

43. In October 2006, Plaintiff McMunn scored first on the Sergeant's test with a score of 85.90. However, he was denied this promotion in favor of Edward Seltenreich who scored 77.60 on the exam, and who was not in the military. Further, Plaintiff McMunn possessed greater length of service and experience for the position.

44. In August 2007, Plaintiff McMunn was promoted to Sergeant after asserting USERRA claims against Defendants, which were founded. Plaintiff McMunn is not seeking to recover monetary damages for this denied promotion.

45. Plaintiff McMunn took the test to become Lieutenant on several occasions, such that he was on the Lieutenant list in June of 2018 when the position was vacated by Defendant Isola.

46. Plaintiff McMunn scored a 90.50 on the test, and expected to be selected for the position, as he was the only candidate on the list.

47. The Defendants, however, did not fill the Lieutenant position while Plaintiff McMunn was the only eligible candidate. Rather, the position remained unfilled through the end of 2018 in order to wait and see who would be on the next list.

48. Plaintiff McMunn was the highest scoring candidate on the March 2019 list, which included Sergeants Daniel Hartman and Daniel A Bennet. Plaintiff McMunn scored 90.50 on the exam, Hartman scored 81.80, and Bennet scored 74.10. Neither Hartman or Bennet are or were in the military.

49. Despite Plaintiff McMunn's outstanding service, stronger qualifications, and longer tenure with the QVPD, Sergeant Hartman was promoted to the Lieutenant position. Further, notwithstanding a veteran's credit of 2.50 points, Plaintiff McMunn still scored much higher on the Lieutenant test than the other candidates.

50. The Lieutenant position is more prestigious and has a higher annual salary than Plaintiff McMunn's current position as a sergeant.

51. Defendants failed to promote Plaintiff McMunn to the Lieutenant position because of his military service.

### Denied Overtime, Training and Job Opportunities

52. Plaintiff McMunn has been denied opportunities for overtime which are afforded to the sergeants in the QVPD who are not in the military.

53. Commencing in June 2008 to the present, Plaintiff McMunn has specifically asked for overtime and was told by Defendant Isola that he in fact was not getting overtime in favor of the other sergeants, none of whom were or are in the military.

54. The Defendants therefore have and continue to deny Plaintiff McMunn overtime on the basis of his military service.

55. In addition to denying Plaintiff McMunn promotions and overtime, the Defendants denied Plaintiff McMunn the training that is afforded to sergeants who are not in the military.

56. Plaintiff McMunn was the only officer certified to carry, repair and teach on the use of a carbine rifle. His certifications were through the military and the Defendants were aware of same, as he had continuously offered to conduct training for new members of the QVPD.

57. However, commencing in 2010, Plaintiff McMunn's less senior and less qualified co-workers who were and are not in the military were afforded rifle training.

58. To date, despite numerous requests, Plaintiff McMunn is still not allowed to carry and receive training on the rifle. The Defendants' refusal to allow Plaintiff McMunn this training has limited his ability to earn overtime.

59. Plaintiff McMunn was denied this training to limit his ability to advance in the department.

60. Commencing in 2016, Defendants began to reduce Plaintiff McMunn's job duties, including with respect to weapons, taser and other training of other officers. These job duties went to other sergeants in the QVPD who are not in the military.

11

61. For example, immediately after Plaintiff McMunn returned from his 2016 deployment, he was stripped of his duties as supervisor of the Taser and E-Justice programs without any basis. These duties were then assigned to officers who were not in the military, even though Plaintiff McMunn's deployment had no impact on the programs. Plaintiff McMunn earned overtime while he was the supervisor of these programs, and as such, the Defendants' decision to strip him of these duties deprived him of said overtime.

62. Defendants withdrew these job duties from Plaintiff McMunn in an effort to limit his ability to advance in the department and his ability to earn overtime, solely on the basis of his military service.

<u>Edwin MacDonald</u>

63. Plaintiff Edwin MacDonald served in the Coast Guard reserve from 1982-2003. Mr. MacDonald served this country with distinction and honor.

64. Plaintiff MacDonald commenced his employment with the QVPD as a Bonded Deputy in 1982.

65. In 1984 Plaintiff MacDonald was promoted to the position of Police Officer with the QVPD.

*Harassment*

66. Plaintiff MacDonald would leave for periodic tours of duty with the Coast Guard while he was employed with the QVPD. Shockingly, Plaintiff MacDonald was harassed by members of the QVPD, including then Chief John Kalmus regarding his tours of duty.

67. Kalmus and others would call the Coast Guard to check up on him because they did not believe that he was actually on duty.

68. Coughlan would also follow up with the Coast Guard to harass Plaintiff MacDonald. This harassment occurred up until Plaintiff MacDonald's retirement in 2004.

69. In October 2001, short after the terrorist attacks of September 11, 2001, Coughlan told Plaintiff MacDonald that he was ripping off the QVPD by taking leave and that he had been "caught". This comment caused Plaintiff MacDonald to suffer great distress and anxiety, as he became fearful for his job due to his military service.

### *Denied Promotions*

70. Plaintiff MacDonald applied for a promotion to the position of Sargent on three occasions, and was denied a promotion on all three occasions. As such, Plaintiff MacDonald never received a promotion during his twenty-two (22) years at the QVPD.

71. In 1992 Plaintiff MacDonald applied for the position of Sargent, but was denied in favor of a candidate who was not in the military.

72. In 1994 Plaintiff MacDonald again applied for the position of Sargent, but was again denied in favor of Defendant Isola, who was not in the military.

73. In 1996 Plaintiff MacDonald again applied for the Sargent position, and was denied in favor of John Donovan, an officer who was not in the military.

74. Therefore, on three occasions Plaintiff MacDonald was denied a promotion to Sargent in favor of officers who were not in the military, despite his superior qualifications, tenure and experience.

### *Denied Overtime*

75. Plaintiff MacDonald was denied overtime on the basis of his military service.

76. Shockingly, after Plaintiff MacDonald went on a leave of military service after September 11, 2001, all of his requests for overtime were denied. Prior to September 11, 2001, the majority of Plaintiff MacDonald overtime requests were denied.

77. Sometime after September 11, 2001, MacDonald's wife, Susan, was called into the office of the then mayor, Thelma Jorgensen and told "Have no doubt, you will lose all of Edwin's benefits, including health care for your family when all accrued time is gone."

78. Plaintiff MacDonald's fellow officers who were not serving in the military were not denied overtime from 1984-2004.

79. From 1984 to 2004, Plaintiff MacDonald was denied nearly Two Hundred Thousand Dollars ($200,000) worth of overtime due to his military service.

80. Overtime was typically allotted to officers on the basis of seniority. However, even after Plaintiff MacDonald had accrued seniority over other officers, he was still denied overtime in favor of those officers who were not serving in the military.

81. Plaintiff MacDonald is aware that other members of QVPD who served in the military, such as Richard Kapell, were similarly discriminated against on the basis

of their military service. Plaintiff MacDonald is further aware that some members of QVPD expressed their desire to join the military but were dissuaded from doing so after witnessing the discrimination suffered by Plaintiff MacDonald and Plaintiff McMunn.

## CLAIMS FOR RELIEF

82. In denying Plaintiffs McMunn and MacDonald promotions, overtime and further discriminating against them on the basis of their military service, Defendants violated and continue to violate the Uniformed Service Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§4301-4335, warranting Plaintiffs' recovery of monetary damages.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which he is entitled, including but not limited to:

1. Awarding reasonable attorneys fees and the costs and disbursements of this action;

2. Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.

Dated: Garden City, New York
      May 18, 2021

                                        /s/
                                  Paul Bartels, Esq.
                                  Bell Law Group PLLC
                                  *Attorneys for Plaintiff*
                                  100 Quentin Roosevelt Blvd., Suite 208
                                  Garden City, NY 11530
                                  (516) 280-3008