**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JASON MCMUNN,

                       Plaintiffs,         **REPORT AND RECOMMENDATION**

      v.                               **21-CV-2805 (GRB) (ST)**

VILLAGE OF QUOGUE, CHRISTOPHER ISOLA
and ROBERT COUGHLAN

                       Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiff, Jason McMunn, ("Plaintiff" or "McMunn") filed the instant case on May 18, 2021 alleging claims of discrimination and harassment against Defendant Village of Quogue, Christopher Isola and Robert Coughlan ("Defendants") seeking declaratory relief, injunctive relief and compensatory damages for alleged violations of the Uniformed Service Employment and Reemployment Rights Act of 1994.[1]

On December 2, 2021, Plaintiff filed an Amended Complaint against all Defendants. On June 21, 2023, Plaintiff filed a letter motion requesting leave from the Court to file a Second Amended Complaint in order to add claims of age discrimination against the current Defendants and to also add additional defendants. This Court subsequently requested that Plaintiff's letter motion be fully briefed, which is now pending before this Court ("Motion").

Defendants oppose the instant Motion on the grounds that, among other things, Plaintiff's additional claims are futile, Plaintiff may not implead additional defendants and that a second amendment at this stage of the litigation would be prejudicial.

---

[1] Note, Edwin MacDonald was previously a Plaintiff as well, but has since been terminated. Additionally, the Quogue Village Police Department ("QVPD") was previously a Defendant, but has also been terminated. Therefore, neither of these parties are included above.

Per the Honorable Gary R. Brown's Individual Practice Rules, the instant Motion was automatically referred to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that Plaintiff's Motion to Amend be DENIED in its entirety.

## I.    BACKGROUND

### A. Factual Background

*1. The Parties*

*a. Current Parties from First Amended Complaint[2]*

Plaintiff Jason McMunn ("Plaintiff" or "McMunn") is a resident and domiciliary of Suffolk County, New York. *See* Pl. First Amended Compl. at ¶ 8, ECF 21. Plaintiff alleges that "[a]t all times relevant to the Complaint, Plaintiff McMunn was an 'employee' of Defendants." *Id.*

Defendant Village of Quogue ("Village") "was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 7 Village Lane, Quogue, New York 11959." *Id.* at ¶ 9. Plaintiff further alleges that: "[a]t all times relevant to the complaint, Defendant Village was Plaintiff's 'employer' as that term is defined by USERRA. At all times relevant herein, the Village operated, owned, controlled, maintained and set and determined the employment practices, policies and decisions of the Quogue Village Police Department, including with respect to Plaintiff McMunn." *Id.*

Defendant Christopher Isola ("Isola") "was and still is a resident of the County of Suffolk, State of New York." *Id.* at ¶ 10. Plaintiff further alleges that: "[a]t all times relevant to the complaint, Defendant Isola was Plaintiff's 'employer,' as that term is defined by USERRA.

---

[2] For the Current Parties section, this Court cites to Plaintiff's First Amended Complaint since that is the most recent Complaint that precedes the proposed amendments in the instant Motion. This Court will turn to Plaintiff's Proposed Second Amended Complaint *infra* when reviewing Plaintiff's current allegations and proposed additional defendants.

Defendant is the current Chief of the QVPD." *Id.*

Defendant Robert Coughlan ("Coughlan") "was and still is a resident of the County of Suffolk, State of New York." *Id.* at ¶ 11. Plaintiff further alleges that: "[a]t all times relevant to the complaint, Defendant Coughlan was Plaintiff's 'employer,' as that term is defined by USERRA. Defendant Coughlan is the former Chief of the QVPD." *Id.*

### b. Additional Defendants from Proposed Second Amended Complaint

Edward Necarsulmer ("Necarsulmer") "was and still is a resident of the County of Suffolk, State of New York. At all times relevant to the Second Amended Complaint, Defendant Necarsulmer was Plaintiff's 'employer,' as that term is defined by USERRA and the NYSHRL." *See* Plaintiff's Proposed Second Am. Compl. ("Proposed Compl.") at ¶ 12, ECF 54-9. Plaintiff further alleges that Necarsulmer: "has decision-making authority. Defendant is a policymaking official. Defendant Necarsulmer has been a trustee on the Village's Board of Trustees ('Board') since 2009." *Id.*

Jeanette Obser ("Obser") "was and still is a resident of the County of Suffolk, State of New York. At all times relevant to the Second Amended Complaint, Defendant Obser was Plaintiff's 'employer,' as that term is defined by USERRA and the NYSHRL." *Id.* at ¶ 13. Plaintiff further alleges that Obser: "had decision-making authority. Defendant was a policymaking official. Defendant Obser served on the Board from 2002 to 2020." *Id.*

Peter Scott Sartorius ("Sartorius") "was and still is a resident of the County of Suffolk, State of New York. At all times relevant to the Second Amended Complaint, Defendant Sartorius was Plaintiff's 'employer,' as that term is defined by USERRA and the NYSHRL." *Id.* at ¶ 14. Plaintiff further alleges that Sartorius: "had decision-making authority. Defendant was a policymaking official. Defendant Sartorius served as the Village's Mayor from 2009 to 2022."

*Id.*

Randy Jay Cardo ("Cardo") "was and still is a resident of the County of Suffolk, State of New York.  At all times relevant to the Second Amended Complaint, Defendant Cardo was Plaintiff's 'employer,' as that term is defined by USERRA and the NYSHRL." *Id.* at ¶ 15.  Plaintiff further alleges that Cardo: "has decision-making authority.  Defendant is a policymaking official.  Defendant Cardo has been a trustee on the Village's Board of Trustees ('Board') since 1995." *Id.*

Kimberly Payne ("Payne") "was and still is a resident of the County of Suffolk, State of New York.  At all times relevant to the Second Amended Complaint, Defendant Payne was Plaintiff's 'employer,' as that term is defined by USERRA and the NYSHRL." *Id.* at ¶ 16.  Plaintiff further alleges that Payne: "has decision-making authority.  Defendant is a policymaking official.  Defendant Payne has been a trustee on the Village's Board of Trustees ('Board') since 2006." *Id.*

2. *Relevant Factual Background and Allegations*[3]

Plaintiff alleges that he has served the United States both as a member of the Quogue Village Police Department ("QVPD"), which is a subdivision of the Defendant Village of Quogue ("Village"), and as a member of the United States Military.  *See* Proposed Compl. at ¶ 1.  Plaintiff further alleges that he has "simultaneously served these esteemed organizations with distinction in a true demonstration of service and patriotism." *Id.*

Plaintiff further alleges that despite Plaintiff's service to the Village and the United States, "the Village" and "individual Defendants Christopher Isola, Robert Coughlan, Peter Scott Sartorius, Edward Necarsulmer, Jeanette Obser, Randy Jay Cardo and Kimberly Payne" have

---

[3] These facts will be lifted from Plaintiff's Proposed Second Amended Complaint ("Proposed Complaint") and focus on Plaintiff's proposed age discrimination claim since that is the basis of Plaintiff's instant Motion.  *See* ECF 54-9 [Proposed Complaint].

discriminated against Plaintiff "on the basis of his military service and age." *Id.* at ¶ 2.[4]  Moreover, Plaintiff alleges that "[t]he Defendants jointly denied McMunn promotions on the basis of his military service and age, and further subjected him to harassment, ridicule and further disparate treatment." *Id.*

Plaintiff alleges that: "[t]his harassment and disparate treatment culminated in April 2019 when the QVPD denied Mr. McMunn a promotion to the position of Lieutenant, despite him being the most qualified candidate and scoring the highest on the civil service examination." *Id.* at ¶ 3. "Rather, the position went to a candidate [Daniel Hartman] with far less experience who scored lower on the exam, and who was younger and not in the military." *Id.*

Plaintiff further asserts that: "[t]he Defendants' discrimination against McMunn on the basis of his age and military service is an afront to all veterans of the United States Armed Forces who have sacrificed and dedicated their lives to serving this great country." *Id.* at ¶ 4. "The Defendants' actions as set forth in this lawsuit were both unlawful and unpatriotic, and as such are a permanent stain on the Defendants' legacies and the QVPD." *Id.*

Regarding the QVPD's alleged policies, Plaintiff asserts that: "[t]he Defendants' testimony confirms that in 2019 it was the policy and custom of the Defendants, including the Village, to treat younger candidates for open Lieutenant positions in the Department more favorably than older candidates on the basis of their respective ages." *Id.* at ¶ 156.  Additionally, "[t]he Defendants' testimony confirmed that the Defendants had a stated preference, custom and policy that there be a *significant difference in age* between the Lieutenant and the Chief of Police." *Id* at ¶ 157 (emphasis added).

---

[4] As noted above, the proposed additional defendants at issue in the instant Motion are: Necarsulmer, Obser, Sartorius, Cardo and Payne.  The Proposed Complaint refers to *all* "Defendants" (current and proposed) collectively.  Since the pertinent deposition testimony for each of these individuals will be discussed *infra*, the Court need not discuss it now.

Plaintiff further alleges that: "[t]he Defendants therefore had a custom and policy whereby candidates for the position of Lieutenant near or over the age of fifty (50), such as Plaintiff McMunn, were denied promotions to the position of Lieutenant on the basis of their advanced age as compared to younger candidates under the age of 40, such as Lieutenant Hartman." *Id.* at ¶ 158. "The policy and custom as aforesaid was created, implemented and followed by all of the Defendants, all of whom had decision making authority with respect to the selection of candidates for the Lieutenant position." *Id.* at ¶ 159.

Finally, Plaintiff alleges that: "[t]he policy and custom of the Defendants as aforesaid necessarily discriminated against Plaintiff McMunn and treated him differently than younger candidates for the Lieutenant position on the basis of his age, in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution and the NYSHRL." *Id.* at ¶ 160.

*3. Claims for Relief*[5]

Plaintiff's Proposed Compl. at ¶ 173 asserts that: "[i]n denying Plaintiff McMunn promotions, overtime and further discriminating against him on the basis of his age and military service, all Defendants violated and continue to violate the Uniformed Service Employment and Reemployment Rights Act of 1994 ('USERRA'), 38 U.S.C. §§4301-4335, the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, and as to the Individual Defendants, the NYSHRL, N.Y. CLS Exec § 290, warranting Plaintiff McMunn's recovery of monetary damages."

Additionally, Plaintiff's Proposed Compl. at ¶ 174 asserts that: "[b]y reason of the foregoing, the Defendants, while acting under the color of state law, deprived Plaintiff McMunn of his constitutional right to equal protection of the law pursuant to the Equal Protection Clause of

---

[5] The Court is only reviewing the Proposed Complaint in this section, and not the original, since the Proposed Complaint is the subject of the instant Motion.

the Fourteenth Amendment to the United States Constitution by denying him the promotion to the position of Lieutenant on the basis of his age and treating him differently than his similarly situated younger co-workers on the basis of his age."

Finally, Plaintiff's Proposed Compl. at ¶ 175 asserts that: "[t]he Defendant Village intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff McMunn's constitutional rights. Such deliberate indifference may be inferred in the following ways:

a. Defendants' custom and practice of discriminating against Plaintiff on the basis of his age. The discriminatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b. Policymakers engaged in and/or tacitly condoned the discrimination."

## B. Procedural History

On May 18, 2021, Plaintiff filed the initial Complaint against Defendants alleging claims of discrimination and harassment against Defendants. *See* ECF 1.[6]

On December 2, 2021, Plaintiff filed an Amended Complaint against Defendants. *See* ECF 21.

On December 15, 2021, Defendants filed their Answer to Plaintiff's Amended Complaint. *See* ECF 22.

After various discovery and depositions occurred, on June 21, 2023 Plaintiff filed a letter motion requesting leave from the Court to file a Second Amended Complaint to add claims of age discrimination against the current Defendants and to add additional defendants as well. *See* ECF

---

[6] As noted *supra*, Edwin MacDonald is no longer a plaintiff in this action even though he was a plaintiff in the original complaint. Additionally, the QVPD is no longer a defendant in this action, despite being a defendant in the original complaint.

44.  On June 22, 2023, this Court issued an Order deferring ruling on Plaintiff's letter motion and instructed Defendants to file a response by June 30, 2023.  *See* ECF entry dated June 22, 2023 [Order].

On June 30, 2023, Defendants filed their Reply in Opposition to Plaintiff's letter motion to amend his Complaint a second time.  *See* ECF 45.  Only July 5, 2023, this Court issued an Order deferring ruling on Plaintiff's letter motion and scheduled a motion hearing for July 12, 2023.  *See* ECF Entry dated July 5, 2023 [Minute Entry].

On July 13, 2023, this Court issued an Order denying Plaintiff's letter motion to amend his Complaint a second time without prejudice to renew based upon Plaintiff's failure to attach the proposed amended complaint.  *See* ECF Entry dated July 13, 2023 [Minute Entry].[7]  On July 19, 2023, Plaintiff renewed his letter motion.  *See* ECF 47.  On July 26, 2023, Defendants filed their Response in Opposition to Plaintiff's renewed motion.  *See* ECF 49.  On August 11, 2023, this Court issued an Order deferring ruling on Plaintiff's renewed motion and scheduled a motion hearing for August 21, 2023.  *See* ECF Entry dated August 11, 2023 [Minute Entry].

On August 21, 2023, this Court issued an Order denying Plaintiff's renewed motion without prejudice and instructed the parties to fully brief the motion to amend.  *See* ECF Entry dated August 21, 2023 [Minute Entry].  This Court's Order further instructed that Plaintiff serve his Motion on Defendants by September 22, 2023, Defendants serve their response on Plaintiff by October 23, 2023 and that Plaintiff serve his Reply and file the fully-briefed motion on ECF by November 6, 2023.  *Id.*  Plaintiff complied with this Court's Order and filed the fully-briefed Motion by November 6, 2023.  *See* ECF 52-57.

Finally, as noted *supra*, per the Honorable Gary R. Brown's Individual Practice Rules, the

---

[7] Note, while the ECF entry is dated July 13, 2023, the motion hearing occurred on July 12, 2023.

instant Motion was automatically referred to the undersigned to issue a Report and Recommendation.  *See* Judge Gary R. Brown Individual Practice Rules at 1 (referring "[a]ll non-dispositive motions" to the Magistrate Judge).

## II.    JURISDICTION

This Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 38 U.S.C. §§ 4301-4335.

## III.    APPLICABLE STANDARD

Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires," making sure to interpret the rule liberally in favor of amendment so as to enable disputes to be resolved on the merits whenever possible.  *See Coniglio v. Cucuzza,* 345 F.R.D. 372, 377 (E.D.N.Y. 2024) (citing *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (holding that leave to amend is entrusted to the court's discretion)).  "The Rule encourages courts to determine claims 'on the merits' rather than disposing of claims or defenses based on 'mere technicalities.'"  *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 366 (N.D.N.Y. 2021) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)).  "In general, district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."  *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000) (citations omitted).  "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile."  *Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 CIV. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021) (citations omitted).

Fed. R. Civ. P. 15(c)(1) provides that:

[a]n amendment to a pleading relates back to the date of the original pleading when:

(A)    the law that provides the applicable statute of limitations allows relation back;

(B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

## IV.    DISCUSSION

### A. This Court Recommends Denying Plaintiff's Motion to Add Age Discrimination Claims Against the Current Defendants

*1.    This Court Concludes That Plaintiff's NYSHRL Claim is Time-Barred*

This Court concludes that Plaintiff's NYSHRL claim is time barred.  To address this issue, this Court must examine the interplay of the NY CPLR and NYSHRL.  "Under CPLR 9802, 'no action shall be maintained against the village upon or arising out of a contract of the village unless the same shall be commenced within eighteen months after the cause of action therefor shall have accrued, nor unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued.'"  *See Eugene Racanelli, Inc. v. Inc. Vill. of Babylon*, 92 A.D.3d 635, 635-36 (2d Dep't 2012) (quoting N.Y. C.P.L.R. 9802).  For cases *not* involving contracts like the instant case here, NY CPLR 9802 provides that: "*no other action* shall be maintained against the village unless the same *shall be commenced within one year* after the

10

cause of action therefor shall have accrued, *nor unless a notice of claim* shall have been made and served in compliance with section fifty-e of the general municipal law." *Id.* (emphasis added). Finally, "General Municipal Law § 50-e (1) (a) states that a notice of claim shall be served "within ninety days after the claim arises." *Id.* at 636 (quoting N.Y. Gen. Mun. Law § 50-e).

The relevant nuance to the notice of claim requirement is its interplay with the New York State Human Rights Law ("NYSHRL"), as outlined in the paragraphs below.  First, the NYSHRL provides the following under N.Y. CLS Exec. § 296(1)(a) regarding age discrimination:

> "[i]t shall be an unlawful discriminatory practice: (a) for an employer or licensing agency, because of an individual's age… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."[8]

Moreover, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Id.* at N.Y. CLS Exec. § 296(6).  An individual may be held liable as an employer under Section 296(1) if given "sufficient supervisory power." *Bertuzzi v. Copiague Union Free Sch. Dist.*, No. CV174256SJFAKT, 2020 WL 5899949, at *17 (E.D.N.Y. Mar. 9, 2020), *report and recommendation adopted as modified*, No. 17CV4256SJFAKT, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) (internal quotations and citations omitted).  An individual defendant may also be held liable if they have the authority to hire and fire and are empowered to do more than carry out personnel decisions made by others. *Id.* at 17-18.

Regarding the notice of claim requirement, Section 50-e of the Municipal Law provides

---

[8] Note, while N.Y. CLS Exec. § 296(1) is red-flagged, the law has not been overturned in any way that impacts this Court's analysis here.  Additionally, to the extent Plaintiff's Mot. at 14 also relies upon NY CLS Town § 67, this Court concludes Plaintiff's arguments fail based upon the same *scope of employment* issue discussed *infra*.  Indeed, it has been recently recognized that: "[t]he case law is clear that 'injury to person' that Town Law § 67 contemplates includes employment discrimination claims brought pursuant to Executive Law § 296." *See Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 267 (N.D.N.Y. 2023) (citations omitted).

that "service of a notice of claim on a municipal employee is not a condition precedent to the commencement of an action against such person," but a notice of claim must be served on the municipality if the municipality "has a statutory obligation to indemnify such person under this chapter or any other provision of law." N.Y. Gen. Mun. Law § 50-e(1)(b). *Hamilton v. Cnty. of Onondaga, New York*, No. 515CV01333BKSTWD, 2018 WL 4554496, at *17 (N.D.N.Y. Sept. 21, 2018); *Allen v. Antal*, 665 F. App'x 9 (2d Cir. 2016).[9]

Importantly, while the Village here does have an obligation to indemnify and hold harmless its employees, pursuant to the Village of Quogue Code itself, "[t]he duty to indemnify and save harmless… shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." *See* Vill. of Quogue, NY Code § 22-5.[10]  Hence, Plaintiff's key contention is that because: "Defendants made the intentional and explicit decision to discriminate against Plaintiff because of his age," which constitutes "intentional wrongdoing," the Village *does not have an obligation to indemnify* and no notice of claim is required.  *See* Plaintiff's Reply at 3.

In turn, Defendants' Opp. at 9 argues that: "Plaintiff ignores Quogue Village Code § 22-3,

_____

[9] For comprehensiveness, this Court also notes that it is well-aware that "some cases have found that no notice of claim is required when a municipal employee is sued in his or her individual capacity under Executive Law § 296." *See Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 267 (N.D.N.Y. 2023).  When reviewing such case law, the *Arnold* Court discussed the New York Court of Appeals case *Margerum v. City of Buffalo*, 24 N.Y.3d 721 (2015) frequently cited for this proposition with respect to NYSHRL claims and claims of employment discrimination. *Id.* at 266 n.3.  Importantly, however, *Arnold* also provides that the cases holding no notice of claim is required "do not involve situations in which the *municipal employer is required to indemnify the employee defendant*". *Id.* at 267-68 (citations omitted) (emphasis added).  As noted *infra*, this Court concludes such a duty to indemnify is present here because the QVPD's decision to promote Hartman instead of Plaintiff solely occurred within the scope of Defendants' employment.  Additionally, this Court also notes that Plaintiff implicitly concedes that NYSHRL claims have a notice of claim requirement and that indemnification is required under N.Y. Gen. Mun. Law § 50-e(1)(b) so long as the conduct occurred within the scope of Defendants' employment.  Finally, this Court also concludes that *even if* no notice of claim was required and the statute of limitations was satisfied, Plaintiff's amendment should still not be granted because Plaintiff fails to allege any age-discriminatory conduct.  As discussed *infra* in the Section 1983 equal protection section, Plaintiff merely takes issue with the QVPD's succession strategy, which is not inherently discriminatory.

[10] Given that the Vill. of Quogue, NY Code § 22-5 is not available on Westlaw, for ease of reference the Court notes that Vill. of Quogue, NY Code § 22-5 may be found here: https://ecode360.com/6194263#6194276.

which provides that the Village has a duty to provide a defense for employees so long as the employee 'was acting within the scope of his public employment or duties.'  Voting on the new number 2 person in the police department is a clear official duty of a Trustee."[11]  After reviewing the parties' positions and the record itself, this Court is unpersuaded by Plaintiff's arguments. Specifically, Plaintiff cites three cases involving *harassment* of employees or a *hostile work environment*, which are not at issue here.

First, Plaintiff cites *Pohlman v. Vill. of Freeport*, 2020 WL 5878257, at *6 (E.D.N.Y. Sept. 30, 2020), in which the EDNY held that "the Individual Defendants' alleged conduct, which involved discriminatory statements and retaliation against Plaintiff, was not within the scope of their employment."  The alleged discriminatory statements were as severe as a defendant telling the plaintiff that: "Muslims like to behead one another."  *Id.* at 1.  The Plaintiff claimed that he responded by "by telling [the defendant] that his discriminatory actions were unwelcome, offensive, and made plaintiff feel extremely uncomfortable."  *Id.* Conversely, no analogous discriminatory statements occurred here.

Second, Plaintiff relies upon *George v. New York City Transit Auth.*, 2008 WL 4274362, at *1, 3 (E.D.N.Y. Sept. 17, 2008), in which the EDNY held that the City of New York was not required to indemnify an employee that yelled racist epithets and assaulted the plaintiff. Importantly, the Court noted that: "[t]here are no allegations in the Amended Complaint suggesting that [defendant's] conduct was in furtherance of any TA policy."  To the contrary here, the deposition testimony at issue concerns statements *specifically about* the Village of Quogue's succession policy.[12]

---

[11] Again, given that the Vill. of Quogue, NY Code § 22-3 is not available on Westlaw, for ease of reference the Court notes that Vill. of Quogue, NY Code § 22-3 may be found here: https://ecode360.com/6194263#6194276.

[12] Again, the specific deposition testimony at issue will be discussed *infra* regarding Plaintiff's equal protection claim.

Third, Plaintiff cites *JD1 v. Canisius Coll.*, No. 1:21-CV-521, 2022 WL 2308902, at *1 (W.D.N.Y. June 27, 2022), which is a case that involved whether a college may be liable for an athletic coach who managed an environment that promoted sexual assault against women and lesbians.  Once again, *JDL* is not on point for the same reasons as the other two cases discussed above, which is that the deposition testimony at issue here concerned the specific internal QVPD policy of succession related to the promotion for the position of Lieutenant.

Ultimately, this Court agrees with Defendants' Opp. at 8-9 that "*none* of the cases cited by Plaintiff hold that an employee performing their job, [i.e.] voting on a key position in a tiny Village, is acting outside the scope of their employment m*erely because the Plaintiff alleged a discriminatory motive*.  The reason is simple, Plaintiff's argument is entirely without precedent." *Id.* (emphasis added).  Hence, this Court concludes that Plaintiff's NYSHRL claim is time-barred.[13]

### 2. This Court Concludes That Plaintiff's Proposed Second Amended Complaint Fails to State an Equal Protection Claim Under 42 U.S.C. § 1983

This Court further concludes that Plaintiff's Proposed Second Amended Complaint fails to state an equal protection claim, based upon age discrimination, under Section 1983 both for the municipality/official capacity claims and the individual capacity claims.  "To state a claim for relief under Section 1983 against a municipal defendant, a plaintiff must demonstrate that he was

---

[13] Once again, as discussed *infra*, this Court concludes that Plaintiff's Proposed Complaint does not facially allege an age discrimination claim, even when considering the deposition testimony at issue.  Hence, this Court is not persuaded by Plaintiff's assertion that: "Defendants are correct that Plaintiff must establish that age was the 'but for' cause of the alleged adverse action. . . However, Defendants claim that Plaintiff has not done so.  This is contradicted by the statements of their own decision-makers who, in no uncertain terms, testified that they chose Mr. Hartman over Plaintiff because of Plaintiff's age."  *See* Plaintiff's Reply at 5.  While the deposition testimony at issue will be discussed in greater depth *infra*, this Court notes that with respect to the *scope of employment* issue discussed above, "[a]lthough such a determination is typically a question of fact, the Court may decide this question *as a matter of law* where the plaintiff's allegations regarding an individual defendant are limited to conduct that occurred within the scope of employment."  *See Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 268 (N.D.N.Y. 2023) (internal quotations and citations omitted) (emphasis added).

subjected to a constitutional violation resulting from an adopted policy, custom, or practice, which caused injury to plaintiff." *Keles v. Psarelli*, No. 19-CV-3323 (DG)(MMH), 2023 WL 5110157, at \*5 (E.D.N.Y. Aug. 9, 2023) (quoting *Tate v. City of New York*, No. 16-CV-1894 (KAM)(SMG), 2017 WL 10186809, at \*6 (E.D.N.Y. Sept. 29, 2017) (internal quotations omitted)). "Because a Section 1983 claim against a municipal employee in his official capacity is deemed brought against the municipality itself, 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom[.]'" *Id.* (quoting *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Regarding individual capacity claims, "[f]or Section 1983, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" *Keles*, 2023 WL 5110157, at \*5 (quoting *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016)). Personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *Harry v. McDonald*, No. 3:21-CV-1355 (SALM), 2022 WL 3576676, at \*4–6 (D. Conn. Aug. 19, 2022) (finding that complaint failed to plausibly allege personal involvement where allegations merely stated that defendant was member of commission that made allegedly discriminatory hiring decision)).

As for age discrimination claims specifically under Section 1983, "public employees aggrieved by discrimination in the terms of their employment may bring suit from 42 U.S.C. § 1983 against[ ]any responsible persons acting under color of state law[.]" *Id.* (quoting *Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). "However, '[i]t is an open question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action, especially in the absence of an ADEA cause of action.'" *Id.* (quoting *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 288 (S.D.N.Y. 2019)).

> Some courts have held that it is questionable whether or not a plaintiff may even bring a section 1983 equal protection age discrimination claim at all, given that the ADEA supplies a comprehensive federal statutory scheme to remedy this type of injury.... Other courts have held that age-based section 1983 claims are viable, and should be analyzed under the standard *McDonnell Douglas* burden-shifting framework—essentially treating such claims the same as an ADEA claim.... Other courts have held that, because age has not traditionally been recognized as a protected class under the equal protection clause, age-based section 1983 equal protection claims are subjected to different standards than ADEA claims.

*Id.* at 5-6 (*quoting Mackenzie v. New York City Dep't of Educ.*, No. 21-CV-5711 (LTS), 2023 WL 2711848, at *4–5 (S.D.N.Y. Mar. 30, 2023) (collecting cases).

As in *Keles*, this Court will address Plaintiff's § 1983 age discrimination claims here because of "the significant number of courts that have concluded that age-based section 1983 equal protection claims are viable." *Id.* at 6 (citing *Mackenzie*, 2023 WL 2711848, at *4-5 (declining "to address these intricacies" at the motion to dismiss stage); *Kunik v. New York City Dep't of Educ.*, 436 F. Supp. 3d 684, 692 (S.D.N.Y. 2020) (noting open question and declining to "attempt to resolve this legal issue"); *Keles v. Davalos*, 642 F. Supp. 3d 339, 358 (E.D.N.Y. 2022) (analyzing Plaintiff's age-based Section 1983 equal protection claims); *Harry v. McDonald*, No. 3:21CV01355(SALM), 2022 WL 3576676, at *6 (D. Conn. Aug. 19, 2022) ("Courts in the Second Circuit have routinely recognized claims for age discrimination asserted pursuant to section 1983.") (collecting cases)).

With the above rules in mind, "[t]o state a claim under the Equal Protection Clause, 'a plaintiff must demonstrate that he was treated differently than others similarly situated as a result

of intentional or purposeful discrimination.'" *Keles*, 2023 WL 5110157, at \*6 (quoting *Davalos*, 2022 WL 17495048, at \*12). "A plaintiff may bring an equal-protection claim under two theories: selective enforcement or 'class of one.'" *Id.* (quoting *Wilson v. New York*, No. 15-CV-23 (CBA)(VMS), 2017 WL 9674497, at \*21 (E.D.N.Y. Jan. 24, 2017), *adopted by* 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018)). However, as in *Keles*, "because a plaintiff may not allege a 'class-of-one claim' in the public employment context, the court will examine the SAC under the selective enforcement theory only." *Id.* (citing *Davalos*, 2022 WL 17495048, at \*13).

> To prevail on a selective enforcement claim, a plaintiff must prove that—
>
> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Id.* (quoting *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019)).

Here, as noted *supra*, Plaintiff's Proposed Compl. at ¶ 157 alleges that: "[t]he *Defendants testimony* confirmed that the Defendants had a stated preference, custom and policy that there be a significant difference in age between the Lieutenant and the Chief of Police." (emphasis added). Notably, Plaintiff's Proposed Compl. therefore concedes that the *sole basis* for Plaintiff's age discrimination claim is Defendants' deposition testimony.[14] However, upon this Court's own review of this deposition testimony, Plaintiff only relies upon a handful of excerpts which do not facially indicate that any unlawful age discrimination occurred. For comprehensiveness, this Court will now discuss all deposition testimony that Plaintiff relies upon and the surrounding context.

In short, this Court concludes that while some of the Defendants' statements indicates that the QVPD preferred that there be a gap between the retirement timeline for Police Chief and

---

[14] To be clear, Plaintiff's Mot. papers *solely* rely upon the deposition testimony from current Defendants and proposed defendants as well and offers no other evidence in support of age discrimination.

Lieutenant to allow for orderly *succession*, there is no preference for a specific age or discriminatory conduct alleged.  In other words, the concern was not whether a candidate for Lieutenant (like Plaintiff) was simply too old to perform the job, or a general preference for younger candidates.  Rather, some of the Defendants merely considered it a relevant factor that the person they selected to be second-in-command not be in line to retire at the same time as the Police Chief since it would leave the Department with a power vacuum and no trained successor to lead the Department.  This rationale for the QVPD's succession strategy is borne out by the pertinent deposition excerpts below.[15]  While this policy preference could, depending on the age of the Police Chief, result in some candidates being viewed less favorably depending on their age *relative to the Chief*, it is not a direct corollary to age since different candidates could have different expressed retirement plans and as long as the candidate's expected retirement deadline was not the same as the Police Chief, there is no allegation that any of the Defendants expressed a preference for younger candidates, employed any type of age cut-off, or generally viewed older candidates as less desirable than younger candidates.  Ultimately, this Court concludes that such succession planning is nondiscriminatory after reviewing both the deposition testimony and relevant case law discussed *infra*.

<u>Defendant Christopher Isola</u>[16]

First, Plaintiff's Mot. at 3 relies upon current Defendant Christopher Isola's testimony.  As discussed *supra*, Defendant Isola is the current Chief of the QVPD.   Regarding the succession

---

[15] Note, in addition to the individuals discussed *infra*, Plaintiff also seeks to add Kimberly H.H. Payne ("Payne") as a defendant as well.  However, Kimberly H.H. Payne *never* mentions age in Payne's entire deposition.  *See* Deposition of Kimberly H.H. Payne, dated May 15, 2023, ECF 56-7; *see also* Defendants' Opp. at 6 ("Notably, Trustee Payne did not testify that he considered Plaintiff's age at any point during his deposition.").  Hence, there is no reason to discuss Payne further.

[16] This Court notes that Defendant Isola is the only *current* Defendant who mentioned succession during his deposition testimony.  Defendant Robert Coughlan does not address the issue of succession.  *See* Deposition of Robert Coughlan, dated February 16, 2023, ECF 56-2.

issue, Defendant Isola testified that it was important for the Chief and Lieutenant to have a significant age gap and tenure so that a "vacuum" would be avoided and the Chief and Lieutenant would not retire around the same time.  *See* Deposition of Christopher Isola, dated May 10, 2023, ECF 56-3 ("Isola Dep.") at 225:8-226:13 (emphasis added):

> Q. Have you articulated all the reasons you stated to the board as to why Lieutenant Hartman should be promoted to the lieutenant position?
>
> A. In addition to what I've already stated, I had a general sense of trust from him. I felt that he was very capable and *had a much longer tenure ahead of him. That he was going to be with The Department at least another 10 years.* That left The Department in a good position *not to be caught in a vacuum*.
>
> Q. Why did you think that he would be there for at least another 10 years as opposed to Sergeant Bennett or McMunn?
>
> A. I think, I expressed that in both of them, McMunn and Hartman.  I'm sorry. Bennett and Hartman, in that they had more time to go forward.  *And that was a consideration that The Village had asked, what if you retire and Jason retires at the same time, it's going to create a vacuum*. We're going onto have no leadership. Whether that played on their decision, I don't know, but it was discussed. I had just a better relationship and trust with Hartman out of the other candidates. Somebody I knew, I could trust, and count on. That was the gist of it.

Given the above deposition testimony about succession, it is noteworthy that Plaintiff's Reply at 3 concedes that "having a plan for succession *is not inherently evidence of discrimination. . .*" (emphasis added).  Indeed, Plaintiff's admission about succession being nondiscriminatory is consistent with the well-established case law that: "'there is *nothing in age discrimination jurisprudence that would prevent [an employer] from succession planning*.'"  *See Duckett v. Foxx*, No. 12-CV-5203 NGG LB, 2015 WL 4911160, at *9 (E.D.N.Y. Aug. 17, 2015), *aff'd*, 672 F. App'x 45 (2d Cir. 2016) (quoting *Crowe v. Leroy Cent. Sch. Dist.,* 949 F. Supp. 2d 435, 446 (W.D.N.Y. 2013) (adopting report and recommendation) (internal quotation marks and citation omitted)); *see also, e.g., Boston v. Blue Cross & Blue Shield of Kan., Inc.,* 431 F. App'x 763, 767 (10th Cir.2011) (unpublished) ("We ... reject the notion that any mention of succession planning

is tantamount to pretext; compliance with the ADEA and succession planning need not be mutually exclusive."); *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 502 (7th Cir.1982) ( "[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.")).

Relatedly, the EDNY further provided in *Duckett* that evidence of succession is even *less relevant* for age discrimination in the context of failing to *promote* an employee where the employee *still retains their current position* as occurred here. Specifically, the EDNY provided:

> "In any event, the probative value of Socias's succession planning, if relevant at all, *is null*. First, it occurred approximately five years before Plaintiff applied for the Position. Second, and more importantly, this is a failure-to-promote action in which *Plaintiff remains employed by the FAA in his position as an aerospace engineer*. . . The fact that an employer engaged in succession planning could conceivably be probative evidence of age discrimination for an employee whose employment was subsequently terminated, *but it means far less with respect to whether a decision-made five years after the alleged succession planning-not to promote an employee to a new position reflects age discrimination*.

*Duckett*, 2015 WL 4911160, at *9 (emphasis added).

To be clear, this Court recognizes that the timeline in which the succession planning occurred in *Duckett* is not perfectly analogous to the present case. However, per the deposition testimony that Plaintiff cites, the QVPD's succession policy existed well-*before* the promotion at issue involving Plaintiff, which is an important consideration under *Duckett*. Moreover, this Court also notes that *Duckett* is not an isolated case in the EDNY regarding succession. *See Williams v. New York City Transit Auth.*, No. 10CV882ENVCLP, 2014 WL 11474810, at *5 (E.D.N.Y. Sept. 16, 2014), *aff'd*, 620 F. App'x 63 (2d Cir. 2015) (holding that succession planning is not inherently discriminatory and stating that "Williams, simply, identifies no actual—or even theoretical—policy of NYCTA that would have led to discrimination against him on the basis of his age, and certainly not one that provided a 'but-for' cause supporting his complaint that the Librera

committee's decision to recommend Hoban over him was pretextual in any way.").[17]

To attempt to circumvent case law like the above, Plaintiff's Reply at 3 further argues that: "[w]hile having a plan for succession is not inherently evidence of discrimination, coupled with ageist comments and the promotion of a younger employee instead, 'raises genuine issues of material fact' sufficient to support a claim." *Id.* (citations omitted). Yet, Plaintiff cites no allegedly "ageist comments" from any current Defendant or proposed defendant (including Isola) apart from the issue of succession. As for Isola, the only other deposition testimony that Plaintiff refers to is the following, which involves *Plaintiff's own statement* about the difficulty of "old dogs" using "new kid toys" with respect to current technology. *See* Isola Dep. at 221:15-222:22 (emphasis added):

> Q. Was there ever an incident report filed or a complaint filed which stated that Jason's ability to do his job was impaired by his inability to use technology?. . ..
>
> A. No. No report. Just a general vibe that, I believe, *he would even kid about it himself. That old dogs can't use these new kid toys*, things like that. It was just a general -- again, I would compare it to myself. He's of my generation. We're a little less savvy with an iPhone than a younger guy or girl.
>
> Q. Are you saying part of the reason he wasn't promoted [is] because he's older then Lieutenant Hartman?
>
> A. No. I'm using myself as an example.
>
> Q. I have no idea how old you are. You keep saying his proximity of high school, so, in my head I'm saying, okay, it's because of his age. It's a natural conclusion.
>
> A. I understand, my fault on that. It's just a general impression. General impression of not being as comfortable with technology, whether it's a radio, computer, iPhone, digital camera. How a surveillance system works, with a certain software. Hartman seemed much more savvy with it than McMunn.[18]

---

[17] This Court also recognizes that Plaintiff phrases his age discrimination claim as a Section 1983 equal protection action, but nothing in the above case law suggests that the reasoning about succession is any different simply because Plaintiff's age discrimination claim here is styled as a Section 1983 claim.

[18] Note, this Court has also reviewed the case law cited in Plaintiff's Reply at 4-5 for the proposition that the comments above concerning technology are "explicitly the kind of discrimination based upon 'inaccurate and stigmatizing stereotypes that the ADEA was enacted to protect.'" *Id.* (quoting *Chapotkat v. Cnty. of Rockland*, No. 11-CV-06209 NSR, 2014 WL 1373531, at *8 (S.D.N.Y. Apr. 4, 2014), *aff'd*, 605 F. App'x 24 (2d Cir. 2015)) (internal quotations

Relatedly, while Defendant Isola acknowledged that Hartman had not used *all* of the newer technology the QVPD planned to acquire in the future, Defendant Isola further provided that Hartman demonstrated superior technological proficiency by resolving tasks such as "the multiple data terminal in the [police] car freezing up and not working." *Id.* at 224:5-13.

Given that *Plaintiff himself* made the statement about "old dogs" having difficulty using "new kid toys," and that Isola's other statements only involved succession, this Court concludes that Isola's statements do not provide a basis for Plaintiff's age discrimination claim.

<u>Proposed Defendant Jeanette Obser</u>

Plaintiff also relies upon the deposition testimony of Jeanette Obser, a Trustee of the Village of Quogue. *See, e.g.*, Plaintiff's Mot. at 3. Obser's pertinent testimony is the following. *See* Deposition of Jeanette Obser, dated May 16, 2023 ("Obser Dep."), ECF 56-6 at 40:5-25 (emphasis added):

Q. Why did you vote to approve Lieutenant Hartman's promotion to lieutenant?. . .

A. Well, Chris Isola felt strongly about Lieutenant Hartman. And he felt that he got along well with his peers. He was well respected by his peers. *For me, I liked the fact that he was from a younger generation on the force and that's the reason I voted for him in that position.*

Q. Did Chief Isola's opinion have any impact on your vote? . . .

A. *The information that he shared of -- I thought it's really important that he got along well with his peers and that he was well respected by them.*

---

and citations omitted). However, *Chapotkat* does not bolster Plaintiff's argument for at least two reasons. First, *Chapotkat* does not involve analogous technology statements in relation to age. Second, and more significantly, Plaintiff's age discrimination claim was unsuccessful in *Chapotkat* and the Court noted right after the sentence about stereotypes that Plaintiff cites that "[t]he ADEA *does not prevent* employers from taking age-related concerns into consideration." *Id.* (emphasis added); *see also Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 853 (8th Cir.2005) ("factors other than age, but which may be correlative of age, do not implicate the prohibited stereotype, and thus are not prohibited considerations."); *Boston v. McFadden Publ'g, Inc.*, No. 09 Civ. 457(RJH), 2010 WL 3785541, at *11 (S.D.N.Y.2010) ("even if plaintiff was asked about his retirement plans, inquiries about retirement plans do[ ] not necessarily show animosity towards age." (internal citation omitted)). Though this is not an ADEA case, the same rationale is analogous here.

Again, this is another example of a "younger generation" implicitly about a succession gap, especially when considering the surrounding context that Obser valued Isola's input. As discussed *supra*, per Isola's testimony, the only discussions Isola had with the Village Trustees concerning age was the preference for a *gap* in age between the Chief and Lieutenant positions so that both would not retire at the same time. Thus, Obser's deposition testimony does not provide a basis for Plaintiff's age discrimination claim either.[19]

<u>Proposed Defendant Edward Necarsulmer</u>

Plaintiff also relies upon the deposition testimony of Edward Necarsulmer, a trustee to the Village of Quogue. *See, e.g.*, Plaintiff's Mot. at 4. Necarsulmer's pertinent testimony is the following. *See* Deposition of Edward Necarsulmer, dated May 18, 2023 ("Necarsulmer Dep."), ECF 56-8 at 26:16-27:10 (emphasis added):

Q. Why did you vote to approve his promotion?

A. I thought he was highly qualified. I thought he was the right age to fit into the way the village had done -- you know, *had this succession over the years*, and, you know, he had some unique background that I thought made him a great candidate.

Q. What do you mean by he was the right age?

A. What I mean by that is that we've always had in the village, you know, sort of a chief and a lieutenant and there was enough of an age spread so as long as the person did his job, the lieutenant did his job, he would then move on to being the chief.

Again, Necarsulmer's testimony merely discusses the QVPD's preference for a *gap* in age to allow for succession. As with the other deposition testimony discussed above, Necarsulmer's testimony fails to provide a basis for Plaintiff's age discrimination claim.

---

[19] Note, this Court also agrees with Defendants' Opp. at 14 that: "[f]ormer Trustee Obser testified as to *various reasons* that she voted to promote Hartman." (emphasis added). However, even without such additional reasons, when taking into account that Obser relied upon *Isola's* input and that the only discussions Isola testified to having with the Trustees about Plaintiff's age is the *succession gap*, it is futile to add an age discrimination claim here.

Peter Scott Sartorious

Plaintiff also relies upon the deposition testimony of Peter Sartorious, who is the Village of Quogue Mayor.  *See, e.g.*, Plaintiff's Mot. at 4.  Sartorious' pertinent deposition testimony is the following.  *See* Deposition of Peter Scott Sartorious ("Sartorious Dep."), dated May 23, 2023, ECF 56-4, at 31:11-24 (emphasis added):

> Q. What about the length of Lieutenant Hartman's tenure based upon his age as compared to some of the other candidates, was that *a factor* you considered?
>
> A. Yes.
>
> Q. Did you consider any other factors?
>
> A. I considered the recommendations of the chief of police, also the recommendations of the former chief of police.
>
> Q. And who was that?
>
> A. Coughlan.

Additionally, Sartorious testified the following.  *See id.* at 34:25-35:20 (emphasis added):

> Q. In your time as the mayor, do you recall any instance in which the board did not follow the recommendation of a police chief with respect to the hiring or promotion of an officer in the department?
>
> A. No.
>
> Q. Prior trustees testified that the *gap in age* between the lieutenant and a police chief was an important consideration with respect to determining who would get the promotion to lieutenant. Do you agree with that testimony?. . .
>
> A. Yes, I do, it was very important to me to have a *succession strategy*.

Finally, Sartorious also stated the following.  *Id.* at 39:23-40:23 (emphasis added):

> Q. How did Chief Isola indicate to you that he was clearly, as you said, favoring Lieutenant Hartman for the lieutenant position?
>
> A. Well, I think that was going back to prior to 2018, that was Coughlan and Isola who were both recommending at that time thought Hartman would be the best candidate.  I was also very concerned about, again, having a *succession plan* and

24

having a lieutenant.

I mean Isola was going to be the chief and I was concerned about having a lieutenant and a chief that were, you know, *roughly the same age* and we would be left without a – if Isola and McMunn *went out about the same time* we'd be left without a great candidate, internal candidate, for police chief which I didn't want to have, I wanted to promote internally and have a candidate sort of in the wings as Isola was in the wings for Coughlan.

As with the other deposition testimony discussed above, Sartorious' testimony merely suggests, at most, that age was a *factor* considered in the promotion of Hartman. Moreover, to the extent age was a factor, the only testimony concerns a permissible *succession gap* once again.

<u>Randy Jay Cardo</u>

Plaintiff also relies upon the deposition testimony of Randy Jay Cardo, a trustee to the Village of Quogue. *See, e.g.*, Plaintiff's Mot. at 4. Cardo's pertinent deposition testimony is the following. *See* Deposition of Randy Jay Cardo ("Cardo Dep."), dated May 23, 2023, ECF 56-5, at 47:19-48:15 (emphasis added):

Q. And you testified that one of the reasons, among others, that you selected Daniel Hartman was because of the difference between his age and that of Chief Isola, correct?

A. That I personally selected him, yes.

Q. And why did you find that age difference to be important?

A. Because for *succession purposes* you have a chief and a lieutenant that are similar in age it could be problematic in the future to have the chief succeeded by an experienced officer in a department.

Q. So for that reason it would be preferable to have a younger candidate for lieutenant; is that right?

A. It was a factor in my decision.

Once again, Cardo's testimony merely suggests, at most, that age was a *factor* considered in the promotion of Hartman. Like the other proposed additional defendants, to the extent age was

25

a factor, the preference was solely for a *succession gap*.  Indeed, no "ageist comments" were made anywhere in this testimony or the other testimony discussed so far.

Plaintiff's cited case law

After reviewing the above testimony, this Court will review Plaintiff's cited equal protection case law.  Recall that for a selective enforcement claim, a plaintiff must prove that—

(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*See Keles*, 2023 WL 5110157, at *6 (quoting *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019)).  Here, this Court agrees with Defendants' Opp. at 16 that: "Plaintiff's Memorandum cites this standard, and then *completely ignores it*, making no attempt to explain how the allegations in the proposed Second Amended Complaint meet the standard." (citing Plaintiff's Mot. at 6) (emphasis added).[20]  In fact, Plaintiff's Proposed Complaint at ¶ 157 merely states the following regarding the QVPD's custom at issue: "The Defendants' testimony confirmed that the Defendants had a stated preference, custom and policy *that there be a significant difference in age* between the Lieutenant and the Chief of Police."  Yet, recall that Plaintiff's Reply at 3 concedes that: "a plan for succession is *not inherently evidence of discrimination. . .*"  (emphasis added).

Relatedly, none of Plaintiff's cited case law in support of his equal protection claim involves a succession policy analogous to the one here.[21]  Plaintiff's Reply at 3 cites a single

---

[20] Note, Defendants' Opp. at 16 also asserts, without any citation in the record, that: "Plaintiff was one of three (3) candidates for the position of lieutenant. While the officer that received the promotion, Lieutenant Hartman was younger than Plaintiff, he *was also older than the third candidate, Sergeant Bennett*." (emphasis added).  For the reasons discussed above, whether the third candidate was older than Plaintiff or not is irrelevant because succession planning was still proper.

[21] Note, with the exception of *Ireton-Hewitt* discussed above, Plaintiff's Reply only discusses equal protection case law for the proposition that equal protection claims based upon age are permissible.  However, given that this Court has already concluded above that it is appropriate to analyze Plaintiff's equal protection claim on Rule 12(b)(6) grounds, there is no need to discuss this other case law further from Plaintiff's Reply.

nonbinding NDNY case as follows: *Ireton-Hewitt v. Champion Home Builders Co.*, 501 F. Supp. 2d. 341, 352 (N.D.N.Y. 2007) ("Taken as a whole, the sequence of the circumstantial evidence in which Koch terminated Ireton-Hewitt after allegedly making ageist comments, replacing him with a younger employee, and allegedly subjecting him to disparate treatment, raises genuine issues of material fact regarding whether defendant terminated plaintiff because of his age.").  However, the factual posture and ageist comments in *Ireton-Hewitt* are far more severe than here.

In *Ireton-Hewitt*, a *terminated* older employee, the general manager of a prefabricated modular home manufacturing facility, commenced an action against his former employer alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and New York State Human Rights Law (NYSHRL) for conduct related to the termination of his employment.  *Id.* at 345.  There was a *factual dispute* about whether the alleged ageist conversation below took place regarding the management team of the company at issue:

> Al Koch: "Our management sure is old"
> Jim Dunn: "Thank god or I would be dead"
> B.J. Williams: "Hell, Jack Hewitt is 67 years old, right Jim?"
> Jim Dunn: "That's correct but we have a plan in place that will work when Jack retires without the plant missing a beat"

*Ireton-Hewitt*, 501 F. Supp. 2d at 352.  Notably, the Court recognized that: "Koch and Williams [mentioned above] deny and/or do not recollect the conversation, whereas Dunn [also mentioned above] asserts its occurrence and alleges its substance. Also, the record does not disclose the context of the conversation.  Thus, there is an issue of fact with respect to the context of the conversation and a credibility question. . ."  *Id.*  Moreover, the Court noted that: "it is undisputed that a younger individual replaced Ireton–Hewitt pursuant to plaintiff's Succession Plan.  The Plan detailed which individuals would take what positions, if and when the position became vacant.  Essentially, plaintiff picked the individual that replaced him after his termination.

*However, there is an issue of fact with respect to whether Koch knew the age of the replacement before he terminated plaintiff.*" *Id.* (emphasis added).

Conversely here, as discussed *supra*, there is no *termination* of an employee, there is no factual dispute regarding what statements were made, and there is virtually no deposition testimony at all regarding age apart from the issue of succession itself. Thus, this Court concludes that *Ireton-Hewitt* is distinguishable from this case. Moreover, Plaintiff's other cited case law regarding his equal protection claim is either distinguishable and/or does not address succession.[22]

Per the above reasons, this Court concludes that Plaintiff's Mot. to Amend to add an equal protection claim based upon age discrimination should be denied as futile.

**B.  Even if Plaintiff's Age Discrimination Claims Were Added, this Court Concludes that Plaintiff's Request to Add Additional Defendants Should Be Denied**

This Court also concludes that even if Plaintiff's age discrimination claims were added for *current* Defendants, Plaintiff's request to add additional defendants should be denied. Plaintiff's request to add additional defendants focuses on the interplay of Fed. R. Civ. P. 21 and 15.

Rule 21 "provides the standard for adding new defendants in an amended pleading. . ." *Lee v. Delta Airlines, Inc.*, No. 20CV01705WFKLGD, 2023 WL 9184679, at *5 (E.D.N.Y. Mar. 14, 2023), *report and recommendation adopted sub nom. Lee v. Delta Air Lines, Inc.*, No. 20CV01705WFKLGD, 2024 WL 1230263 (E.D.N.Y. Mar. 22, 2024) (internal quotations and citations omitted). Specifically, Fed. R. Civ. P. 21 provides that: "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms,

---

[22] Specifically, Plaintiff's Mot. at 5-12 covers Plaintiff's Section 1983 equal protection claim based upon age discrimination. Pages 5-7 merely outline the legal standard for the age discrimination claim. Pages 7-8 then cite the same deposition testimony already discussed *supra*. Pages 8-9 then cite cases for the proposition that Plaintiff's age discrimination claim arises out of the same facts as Plaintiff's original complaint. Finally, pages 10-12 discuss the legal standard for individual capacity Section 1983 claims and more of the deposition testimony already discussed above.

add or drop a party." "A motion to join new parties filed after the time to do so has expired must

show the same 'good cause' that applies under Rule 16." *Lee*, 2023 WL 9184679, at \*5. Once

good cause is shown, or if the motion is filed before good cause must be shown, "[t]he same liberal

standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21."

*Id.* (quotations and citations omitted). Finally, "courts have held that there is in practical terms

little difference between [Rule 21] and Rule 15." *Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-CV-

5824, 2018 WL 2121550, at \*3 (E.D.N.Y. May 8, 2018).

The pertinent nuance is that while Rule 21 gives this Court discretion to add additional

defendants, it does *not* provide that any *claims* against the proposed new defendants relate back to

the initial filing. Indeed, multiple NY cases have held that relation back under *Rule 15(c)* still

governs. For example, after reviewing the Court's discretion under Rule 21, the SDNY has

historically provided that: "since the applicable statute of limitations has run on the 1978-79 claims

included in the second amended complaint. . . the *Court must also determine whether the*

*requirements of Rule 15(c)*, which govern the relation back of amendments, have been satisfied. .

." *Soler v. G & U, Inc.*, No. 78 CIV. 6252, 1983 WL 2060, at \*2 (S.D.N.Y. July 26, 1983)

(emphasis added); *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y. 1986) ("Thus, *if the*

*prerequisites prescribed in Rule 15(c) have been met*, the addition of a party under Rule 21 should

relate back and prevent the successful interposition of a statute of limitations defense.") (quotations

and citations omitted) (emphasis added).

Fed. R. Civ. P. 15(c)(1)(C) provides that an amended pleading *relates back* to the date of

the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a
> claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided
> by Rule 4(m) for serving the summons and complaint, the party to be brought in by
> amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.

*Id.* (emphasis added).  Importantly, the SDNY has recently provided that Rule 15(c)(1) is not satisfied where an amendment seeks to add *additional parties*: "[c]ourts in this Circuit have found that Rule 15(c)(1)(C) applies only where an amendment changes the party or the naming of the party against whom a claim is asserted'—*not where an amendment adds a previously unmentioned party*."  *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2019 WL 4007361, at *3 (S.D.N.Y. Aug. 26, 2019) (collecting cases) (internal quotations and citations omitted) (emphasis added).  Moreover, as discussed in *CBF Indutria*, the EDNY has provided in *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129–31 (E.D.N.Y. 2014) that "[w]here a plaintiff *has not mistakenly sued the wrong party*, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C)—a 'mistake concerning the proper party's identity'—has not been met."  *Id.*  (emphasis added).

Here, Plaintiff never asserts that he is seeking to *substitute* an improper party with a proper party or identify a *mistake* about a party's identity.  Rather, Plaintiff is seeking to *add* Necarsulmer, Obser, Sartorious, Cardo and Payne as *additional* defendants.  Moreover, none of Plaintiff's cited case law suggests *additional* parties may be added under Rule 15 here.  Indeed, the main case Plaintiff's Mot. at 19-20 relies upon, *Krupski v. Costa Crociere S. p. A.* 560 U.S. 538, 549 (2010), involved the issue of a *mistaken* party.  *See In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 130 ("Moreover, although *Abdell* and the other decisions cited relied on *Krupski*, they failed to recognize that *Krupski* was a wrong party case if ever there was one, *and emphatically not an additional party case*.") (emphasis added).  Thus, this Court concludes that Plaintiff cannot satisfy

the relation back doctrine to add additional parties under Rule 15.[23]

Finally, Plaintiff argues that, even if Rule 15 is not satisfied, relation back is still proper under the "more forgiving principle" of N.Y. CPLR § 203.  *See* Plaintiff's Reply at 8-9. Specifically, Plaintiff argues that: "[c]ourts must also examine the 'controlling body of limitations law' and apply state law if it provides 'a more forgiving principle of relation back than the one provided' by Rule 15(c)."  *Id.* (quoting *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)). Plaintiff further argues that "[t]he Second Circuit has made clear that New York law provides a more forgiving principal of relation back than does Rule 15(c)."  *Id.*  Plaintiff then asserts that N.Y. CPLR § 203 is "more forgiving" and allows for *additional parties* to be added based upon the following discussion of CPLR § 203 from the New York Court of Appeals in *Buran v. Coupal*, 87 N.Y.2d 173, 178 (1995):

> Under this standard, the three conditions that must be satisfied in order for claims against one defendant to relate back to claims asserted against another are that: (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is '*united in interest*' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, *but for an excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him *as well*.

(internal quotations and citations omitted) (emphasis added).

Plaintiff's Mot. at 21 and Plaintiff's Reply at 9 focuses upon the "as well" language to suggest joinder of *additional parties* should be allowed since the proposed new defendants are "united in interest" with the current parties.   However, even if additional parties *were* permitted,

---

[23] To be clear, Plaintiff never disputes that additional parties may only be added for the Section 1983 claim if the statute of limitations is satisfied for relation back purposes.  Indeed, "the statute of limitations for Section 1983 claims is New York's general statute of limitations. . ., which is three years."  *See, e.g.*, *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023).  Here, the original Complaint was filed on May 18, 2021 concerning a promotion denial that occurred in *2019*, *see* ECF 1, and Plaintiff's instant Motion was filed on November 6, 2023. Finally, the statute of limitations for the NYSHRL claim has already been discussed *supra*.

the same deficiency as with Rule 15 still exists since Plaintiff has not shown any "excusable mistake" for not adding the proposed new defendants initially. Instead, Plaintiff's Mot. at 21 makes the conclusory statement that: "[h]ere, the individual members of the Board of Trustees knew full well that they voted against promoting Plaintiff to Lieutenant because of his age, and that but for a mistake of that fact, would have been named as responsible for the denial of the promotion." However, as Defendants' Opp. at 17-18 notes, Plaintiff interviewed with the trustees during 2019 and conceded during his deposition that he *knew* "that the Trustees made the final determination as to the promotion." (citing Deposition of Jason McMunn, dated January 3, 2023, at 182), ECF 56-1. Plaintiff *never* suggests that he gained further knowledge later on about other trustees involved not originally sued. Hence, Plaintiff did not have any *mistaken* belief about which defendants to sue and Plaintiff's request to add additional defendants should be denied.[24]

## V.      CONCLUSION

For the foregoing reasons, this Court recommends Plaintiff's Motion to Amend be DENIED in its entirety.

## VI.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court

---

[24] To the extent Plaintiff relies upon *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) as an example of a case applying a "more forgiving principle" than Rule 15 regarding relation back, this Court is unpersuaded by Plaintiff's argument. This Court agrees with Defendants' Opp. at 18-19 that in *Hogan*: "the Second Circuit did not examine relation back through CPLR 203, as Plaintiff is attempting to do, but rather applied CPLR § 1024, which provides an alternate basis for substituting for existing John Doe defendants upon discovering new information." Conversely here, Plaintiff did not include any John Doe defendants so *Hogan* is distinguishable for that reason. Additionally, *Hogan* also does not cure Plaintiff's deficiency of failing to identify any *mistake* that took place when initially filing suit that would have caused Plaintiff to not initially add the proposed defendants.

of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/ Steven Tiscione
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
June 27, 2024