UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JASON MCMUNN,

                             Plaintiff,

        -against-

VILLAGE OF QUOGUE, CHRISTOPHER ISOLA
ROBERT COUGHLAN,

                        Defendants.
------------------------------------------------------------------X

21-cv-2805(GRB)(ST)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BELL LAW GROUP, PLLC

*Adam P. Grogan*

By: _____
        Adam P. Grogan, Esq.
        Partner
        116 Jackson Avenue
        Syosset, New York 11791
        Tel.: (516) 280-3008
        apg@belllg.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................................iv

PRELIMINARY STATEMENT .................................................................................................... 1

LEGAL STANDARD..................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff Has Established a USERRA Discrimination Claim ............................................. 2

        A.    Plaintiff Has Suffered an Adverse Action ...................................................... 2

        i.    Plaintiff Was Denied Overtime, Which Constitutes an Adverse Action ........................ 4

        ii.    Plaintiff Was Denied Training, Which Constitutes an Adverse Action ........................ 6

        B.    Plaintiff Has Established a Causal Connection............................................................ 7

    II.    Plaintiff Can Establish an Equal Protection Claim Based On Age.................................. 10

        A.    Standard for Equal Protection Cases............................................................. 10

        B.    Age is a Protected Class................................................................................ 11

        C.    Genuine Issues of Material Fact Remain, Which Make Summary Judgment Improper 13

        D.    Defendants Are Not Entitled To an Inference Against Discrimination........................ 14

        E.    Defendants Had No Succession Plan............................................................. 15

        F.    Age is a "but for" Cause of Discrimination.................................................. 17

G.    Defendants Coughlin and Isola Are Not Entitled To Qualified Immunity ............... 17

H.    The Discrimination was Led by Defendant Isola .......................................... 18

III.    Plaintiff Has Established a Hostile Work Environment Claim Based Upon USERRA 19

CONCLUSION ...................................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Cases**

*Belfi v. Prendergast,* 191 F.3d 129 (2d Cir. 1999)……………………………………… 10

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ………………………………………9, 23

*Caines v. City of New York,* 649 Fed. Appx. 74 (2d Cir. 2016)…………………………...8, 12, 13

*Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000) …………………………….…..20

*Carpenter v. City of Mount Vernon* 198 F. Supp. 3d 272 (S.D.N.Y. 2016) ……………….……..12

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir. 1994) ………………….……….7

*Donofrio v. IKEA US Retail, LLC,* 2019 U.S. Dist. LEXIS 230218 (E.D. Pa. 2019)……………21

*EEOC v. Local 638… Local 28 Sheet Metal Workers' Int'l Ass'n*, 2001 U.S. Dist. LEXIS 627

   (S.D.N.Y. 2001)……………………………………………………………………………….13

*EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497 (E.D.N.Y. 2014)……………………26

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)……………………………………...18

*Fife v. MetLife Grp. Inc.*, 411 F.Supp. 3d 149 (Dist. Mass. 2019)………………………………21

*Gachette v. Bridge,* 2016 U.S. Dist. LEXIS 205469 (S.D.N.Y. 2016)………………………….10

*Gallo v. Prudential Residential Serv.,*

   22 F.3d 1219 (2d Cir. 1994)………………………………………………………………….7

*Gross v. PPG Indus., Inc.,* 636 F.3d 884 (7th Cir. 2011)………………………………………….9

*Grullon v. City of New Haven,* 720 F.3d 133 (2d Cir. 2013…………………………………..24

*Harry v. McDonald,* 2022 U.S. Dist. LEXIS 148768 (Dist. Conn. 2022)………………………17

*Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396 (S.D.N.Y. 2014)……………………..8

*Hu v. City of New York,* 927 F.3d 81, 91 (2d Cir. 2019)…………………………………16, 17

*Hughes v. City of New York*, 20-CV-3341(AMD)(RLM)(E.D.N.Y. 2021)……………………...25

*Jungels v. Jones,* 112 F.3d 504 (2d Cir. 1997)……………………………………………………17, 24

*Keles v. Davalos,* 642 F.Supp 3d 339 (E.D.N.Y. 2022)………………………………………………17

*Khazin v. City of New York*, 2020 U.S. Dist. LEXIS 265419 (E.D.N.Y. 2020)…………………10

*Latif v. City of New York*, 20204 U.S. Dist. LEXIS 57300 (S.D.N.Y. 2024)……………………..8

*Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020)…………….23

*Looney v. Black*, 702 F.3d 701 at 705-06 (2d Cir 2012)……………………………………………23

*Mackenzie v. New York City Dep't of Educ.*, 2023 U.S. Dist. LEXIS 55773 (S.D.N.Y. 2023)…17

*Massachusetts Bd. Of Retirement v. Murgia*, 427 U.S. 307 (1976)…………………………...18

*McCarthy v. Dun & Bradstreet Corp.*,

   482 F.3d 184 (2d Cir. 2007)…………………………………………………………...7, 15

*McConnell v. Anixter, Inc.*, 944 F.3d 985 (8th Cir. 2019)………………………………………...9

*McMunn v. Vill. Of Quogue,* 2024 U.S. Dist. LEXIS 154042 (E.D.N.Y. 2024)………………...17

*Merisier v. Kings Cty. Hosp.*, 2020 U.S. Dist. LEXIS 185420 (E.D.N.Y. 2020)………………..11

*Meyer v. McDonald,* 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017)………………………………….20

*Moore v. Metro. Transp. Auth, 999 F. Supp. 2d 482 (S.D.N.Y. 2013)*…………………………..12

*Muldrow v. City of St. Louis,* 601 U.S. 346 (2024)…………………………………………….9, 10, 12

*NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 4301 (1983)……………………………………………7

*O'Connell v. Town of Bedford,* 2022 U.S Dist. LEXIS 164288 (S.D.N.Y. 2022)………………..9

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)……………………20

*Patterson v. County of Oneida,* 375 F.3d 206 (2d Cir. 2004)……………………………………16

*Pearson v. Callahan,* 555 U.S. 223 (2009)……………………………………………………23

*Preston v. Bristol Hosp*……………………………………………………………………..11

*Preston v. Bristol Hosp.*, 645 Fed. Appx. 17 (2d. Cir. 2016)……………………………..11, 12

*Purdy v. Town of Greenburgh,* 166 F. Supp. 2d 850 (S.D.N.Y. 2001)……………………………24

*R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54 (2d Cir. 1997)……………………………………………7

*Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir. 2012)…………………………………26

*Rivers v. N.Y. City Hous. Auth.*, 176 F.Supp. 3d 229 (E.D.N.Y. 2016)……………………………10

*Robles v. N.Y.C. Health*, 20203 U.S. Dist. LEXIS 148373 (E.D.N.Y. 2023)………………..11, 12

*Rudy v. Ecology & Env't, Inc.*, 2017 U.S. Dist. LEXIS 204988 (Dist. Co. 2017)………………21

*San Antonio School District v. Rodriguez,* 411 U.S. 1, 16 (1973)…………………………………18

*Schering Corp. v. Home Ins. Co.,* 712 F2d 4, 9-10 (2d Cir. 1983……………………………...7

*Sorlucco v. New York City Police Department,* 971 F.2d 864 (2d Cir. 1992)…………………...16

*Stampfel v. City of New York,* 2005 U.S. Dist. LEXIS 36371 (S.D.N.Y. 2005)……………..17, 24

*Turley v. ISG Lackawanna, Inc.*, 803 F.Supp. 2d 217 (W.D.N.Y. 2011)……………………10, 11

*United States v. Skrmetti*, 145 S. Ct. 1816 (2025)………………………………………...17, 18

*Vill. Of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016)……………………………………...24

*Warren v. Pataki,* 823 F.3d 125, 136 (2d Cir. 2016………………………………………..24

*Williams v. N.Y. City Transit Auth.*, 2014 U.S. Dist. LEXIS 186940 (E.D.N.Y. 2014)…………20

*Wilson v. New York,* 2018 U.S. Dist. LEXIS 49609 (E.D.N.Y. 2018)999 F. Supp. 2d 482 (S.D.N.Y. 2013)……………………………………………………………………………16

**Statutes**

38 U.S.C. § 4311 ................................................................................................................ 8

38 U.S.C. § 4311(a) ............................................................................................................ 7

42 U.S.C. § 1983 ............................................................................... 15, 16, 17, 23, 24

**Rules**

Tennessee Code §68-33-101 ............................................................................................ 17

**PRELIMINARY STATEMENT**

Plaintiff JASON MCMUNN (hereinafter "Plaintiff" or "Mr. McMunn") respectfully submits this memorandum of law in opposition to the motion for summary judgment filed by Defendants VILLAGE OF QUOGUE, CHRISTOPHER ISOLA and ROBERT COUGHLAN (collectively "Defendants"). In this case, there are significant disputes of material fact which necessitates Defendants' motion being denied in its entirety.

**LEGAL STANDARD**

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir. 1994). The moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law. *See Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996).

Summary judgment is a drastic remedy that should be granted sparingly. *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). The Court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment shall be denied. *Schering Corp. v. Home Ins. Co.,* 712 F2d 4, 9-10 (2d Cir. 1983). The nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997). "[A]nd if . . . there is any evidence

in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Id.*

## ARGUMENT

### I.    Plaintiff Has Established a USERRA Discrimination Claim

USERRA claims are adjudicated using the burden-shifting framework articulated in *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 4301 (1983). To wit:

> "Under that scheme, a claimant carries his burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action; but the employer may nonetheless escape liability by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status."

*Caines v. City of New York,* 649 Fed. Appx. 74 (2d Cir. 2016)(internal quotations omitted).

Here, Plaintiff has suffered an adverse action and can establish that those actions were motivated by his military affiliation.

### A.  Plaintiff Has Suffered an Adverse Action

USERRA prohibits an employer from denying an employee any "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)." 38 U.S.C. § 4311(a). Defendants claim that Plaintiff has not suffered a loss of salary, benefits or leave, and thus plaintiff has not suffered an adverse employment action. *See* Def. MOL at 7. This is blatantly false. Denial of overtime can constitute an adverse employment action. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396 (S.D.N.Y. 2014). So too can a denial of professional training opportunities. *Latif v. City of New York*, 20204 U.S. Dist. LEXIS 57300 (S.D.N.Y. 2024).

2

There is also no requirement that the adverse action be "materially adverse," as the cases cited by Defendants attempt to claim. The relevant text of USERRA states:

> (a)    A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> (b)    An employer may not discriminate in employment against or take any adverse employment action or other retaliatory action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311

Courts in this Circuit and others have repeatedly read into the statute a requirement that an adverse employment action must be "materially adverse" in order to sustain a discrimination or retaliation claim under USERRA. *O'Connell v. Town of Bedford,* 2022 U.S Dist. LEXIS 164288 (S.D.N.Y. 2022); *Gross v. PPG Indus., Inc.,* 636 F.3d 884 (7th Cir. 2011); *McConnell v. Anixter, Inc.*, 944 F.3d 985 (8th Cir. 2019). However, respectfully, this is an improper judicial addition that is not present in the text of the statute. As the Supreme Court has recently explained, "[t]he words "discriminate against" … refer to "differences in treatment that injure" employees." *Muldrow v. City of St. Louis,* 601 U.S. 346 (2024)(citing *Bostock v. Clayton County*, 590 U.S. 644 (2020). ""Discriminate against" means to treat worse…" *Id.* Additionally, "that "worse" treatment must pertain to—must be "with respect to"—employment "terms [or] conditions."" *Id.* "The "terms [or] conditions" phrase, we have made clear, is not used "in the narrow contractual sense"; it covers

3

more than the "economic or tangible." *Id.* While the Supreme Court in *Muldrow* was addressing discrimination under Title VII, the issue, and thus the logic, is the same; to make out a discrimination claim, a litigant "must show harm respecting an identifiable term or condition of employment. What the [litigant] does not have to show, according to the relevant text, is that the harm incurred was "significant." Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow, supra.*

Neither the text of Title VII as analyzed in *Muldrow,* nor the text of USERRA at issue here, requires an adverse action to be "materially adverse" or any other heightened, extra-textual standard. The text of the statutes only requires that an employee be treated worse with respect to a term or condition of employment, and any attempt to heighten that standard is improper. *See, generally, Muldrow v. City of St. Louis,* 601 U.S. 346 (2024).

### i.    **Plaintiff Was Denied Overtime, Which Constitutes an Adverse Action**

Defendants repeatedly misstate the legal standard for allegations regarding loss of overtime, attempting to claim that such an allegation requires that a plaintiff establish "that they requested, and were denied, the opportunity to work overtime." *See* Def. MOL at 7. Defendants then cite to a number of cases that they either, at best, do not understand or, at worst, are intentionally misapplying in order to mislead this court as to the applicable standard. "A deprivation of the opportunity to earn overtime can be an adverse employment action." *Rivers v. N.Y. City Hous. Auth.*, 176 F.Supp. 3d 229 (E.D.N.Y. 2016). There is no requirement that a plaintiff establish that they *requested* and *were denied* the opportunity to work overtime, just that he received less overtime than similarly situated non-members of his protected class. *See, generally Gachette v. Bridge,* 2016 U.S. Dist. LEXIS 205469 (S.D.N.Y. 2016)(citing *Belfi v. Prendergast,* 191 F.3d 129 (2d Cir. 1999). The cases cited by Defendants do not attempt to change this standard,

and do not state what Defendants claim that they state. Defendants claim that *Khazin v. City of New York* states that "a plaintiff must come forth with specific examples of when they requested overtime and the employer denied the request." Def. MOL at 7. There is no such statement in the entirety of the decision in *Khazin. See, generally*, *Khazin v. City of New York*, 2020 U.S. Dist. LEXIS 265419 (E.D.N.Y. 2020).

Similarly, Defendants claim that *Turley v. ISG Lackawanna, Inc.* decided that there was "no adverse action where plaintiff did not identify any instance where he was denied requested overtime work so that it could be given to others." Def. MOL at 8. This, however, completely misstates the relevant facts in *Turley*, wherein the plaintiff "received overtime assignments in the Pickler Department continuously from 2003 through 2008. In fact, he often placed among the top half of employees for overtime hours worked." *Turley v. ISG Lackawanna, Inc.*, 803 F.Supp. 2d 217 (W.D.N.Y. 2011). While the court in *Turley* did state that "Plaintiff does not identify any instance where he was denied requested overtime work so that it could be given to others," that statement was not made as an expression of the required standard, which occurred higher up in the decision, but was made in analysis of the plaintiff's claims in light of the fact that he did demonstrably work a significant amount of overtime. *Id.* At no time did the court state that in any claim of alleged denial of overtime a plaintiff must identify specific instances of requested overtime being denied. *See id., generally.* This is also the case for *Merisier v. Kings Cty. Hosp.*, 2020 U.S. Dist. LEXIS 185420 (E.D.N.Y. 2020).

Plaintiff testified that "overtime is not really something that you ask for. It's offered or it happens because of an incident." Def. Ex. F at 50:24 – 51 – 2. Plaintiff also testified that there have been times when he has had overtime denied. Def. Ex. F. at 42. He also stated that in the last

5

five years he received less overtime than his similarly-situated peers, and beyond the past five years, "it was always less." Def. Ex. F at 44.

> **ii.      Plaintiff Was Denied Training, Which Constitutes an Adverse Action**

Training is considered "a benefit of employment," and "Denial of … training may constitute an adverse employment action." *Robles v. N.Y.C. Health*, 20203 U.S. Dist. LEXIS 148373 (E.D.N.Y. 2023). Defendants' citations regarding the standards for adverse actions are either outdated, articulating a pre-*Muldrow* standard of "material adversity" that is no longer applicable, or, as with Defendants' citation to *Preston v. Bristol Hosp.*, is so completely unrelated to the statement Defendants attempt to support with its use that it borders on a bad faith attempt to mislead the Court as to the applicable standards. Nowhere in the entirety of the decision in *Preston* can it be said that the Second Circuit stated that "an employer's refusal to allow an employee training is typically insufficient to constitute an adverse action" as Defendants claim. Def. MOL at 9; *Preston v. Bristol Hosp.*, 645 Fed. Appx. 17 (2d. Cir. 2016). Even if it did, which again it does not, *Preston,* along with *Carpenter v. City of Mount Vernon* 198 F. Supp. 3d 272 (S.D.N.Y. 2016) and *Moore v. Metro. Transp. Auth.* all apply the pre-*Muldrow* "material adversity" standard that is no longer good law and thus the standards as stated in those cases, requiring a "materially adverse action" "essential for performing job functions" or "related to promotional opportunities" are not applicable.  The text of USERRA only requires that an employee be treated worse with respect to a term or condition of employment, like training opportunities as articulated by this court in *Robles, supra,* and any attempt to heighten that standard is improper. *See, generally, Muldrow, supra.*

Plaintiff has identified four training programs that he was denied: (1) a rifle training program offered by Suffolk County; (2) a training program offered by the company Taser; (3) an

E-Justice program; and (4) a program by the company Glock. Ex. F at pp. 44-45. Whether or not the denial of these trainings was "materially adverse" or essential for performing his job functions or related to promotional opportunities is of no import. Plaintiff has alleged that their denial was discriminatory based upon his military status, which is impermissible pursuant to USERRA and constituted adverse actions.

### B. Plaintiff Has Established a Causal Connection

"[A] claimant carries his burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action…" *Caines, supra.*

Plaintiff has identified that in 2008 he was reprimanded by Defendant Coughlan in approximately 2008 because of his overtime in relation to his military leave. Def. Ex. F at 57:8 – 14. He also testified that other people would get overtime instead of him when he was available to work it. *Id.* at 60:7 – 9.

With regard to training, Plaintiff has identified that he was denied training opportunities because he was on an extended deployment in 2016. Def. Ex. F at 93:18 – 22. Plaintiff has also carried his burden of showing by a preponderance of the evidence that his protected status was a substantial or motivating factor in the adverse employment action because Defendants have already been adjudicated as having discriminated against him because of his military service, which forced Defendants to promote Plaintiff to Sergeant in 2007, which was backdated to 2006 for seniority purposes because of that discrimination. Def. Ex. F at 21:9 – 14. Generally, when discrimination on the part of the defendant has already been proven in the past, "the mere denial of an employment benefit is sufficient to make out a claim for discrimination." *See EEOC v. Local 638… Local 28 Sheet Metal Workers' Int'l Ass'n*, 2001 U.S. Dist. LEXIS 627 (S.D.N.Y. 2001).

Defendants' statements regarding their "legitimate, non-discriminatory reasons" are irrelevant in the USERRA context because USERRA claims are not analyzed pursuant to the *McDonnell-Douglas* framework from whence that standard is taken. Instead, Defendants must show that they would have taken the same actions without regard to the Plaintiff's protected status. *Caines, supra*. Defendants have not met this burden, and the statements made by Defendants in support of their alleged "legitimate, non-discriminatory reasons" are contradicted by the record, raising a question of fact improper for resolution on summary judgment. Defendants claim that "With regard to overtime, there are two ways that overtime can be assigned: (1) pursuant to a grant for particularized enforcement; or (2) based on need due to either a case or another officer being out. When the Department receives a grant, officers can volunteer to work overtime on the enforcement detail." Def. MOL at 15. This is contradicted by Defendants' own Statement pursuant to Rule 56.1, which alleged that "[a]s to state funded enforcement programs, the Department was required to grant overtime opportunities created by such programs to officers who were skilled at detecting specific violations." Def. 56.1 Statement, ¶ 57. Defendants cannot have it both ways, where overtime is granted to whomever volunteers but also it's required to assign overtime work to specific officers "skilled at detecting specific violations." This direct contradiction raises significant credibility issues with regard to Defendants' statements. Defendant Isola testified himself that overtime is assigned, not volunteered for. Def. Ex. D at 49:8 – 12.

Defendants also claim that Plaintiff was removed from the Taser program after he created the password "QVPD SUCKS" for the login to the Taser website. Def. MOL at 11 – 12. This series of events too is riddled with contradictions from Defendant Isola and ignores crucial context in an attempt to paint Plaintiff's actions as deliberate. Plaintiff attempted to set a password in this system multiple times, each being rejected by the system, and after multiple attempts to set a password

were refused by the system, in a moment of frustration, Plaintiff attempted to use "QVPD Sucks" as a password, which the system accepted, to the surprise and frustration of Plaintiff. Def. Ex. F at 95:7 – 96:6. Defendants claim that Defendant Isola "was required to discuss this with a representative from Taser, which caused him embarrassment. Isola was also concerned about the effect on moral for a sergeant to use such a password with a junior officer." Def. 56.1 Statement at ¶ 23. However, Defendant Isola testified that he had to discuss this incident with a representative from Taser, but couldn't recall if this individual was customer support, tech support, or the CEO of the company. Def. Ex. D at 174:20 – 178:7. Further, Defendant's Exhibit S shows that the password was reset by a customer service representative. Nowhere in Defendants' citations does Defendant Isola state that he was "embarrassed." Nowhere in Defendants' citations does Defendant Isola express any concern about "the effect on morale for a sergeant to use such a password with a junior officer." These two statements are pure fabrication with no support in the record, made with the express intent to mislead the Court as to the facts of this case. Defendants should not be rewarded for attempting to invent evidence not in the record. Defendants also claim that Plaintiff was removed from the Taser program at the company's request after the password incident, but that too is false, as there is no other support for such a claim in the record, and the email correspondence with the company does not even remotely begin to support such a claim. Def. Ex. S. Plaintiff has stated that he did not receive training in 2016 because he was on deployment, and was not sent for them after he returned. Def. Ex. F at 93:18 – 22. Plaintiff continued to be involved with the TASER program even after the password incident. Def. Ex. F at 100:3 – 9.

Defendants' statements as to these issues lack credibility and are insufficient to support summary judgment when the court "must resolve all ambiguities, credit all factual inferences that

9

could rationally be drawn, in favor of the party opposing summary judgment." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). Thus, Defendants' motion must be denied as to Plaintiff's USERRA claim.

**II.    Plaintiff Can Establish an Equal Protection Claim Based On Age**

**A.  Standard for Equal Protection Cases**

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… causes… the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action…" 42 U.S.C. § 1983. "To maintain a § 1983 claim, a plaintiff must show that (1) the person who committed the complained-of conduct acted under color of state law and (2) that conduct must have deprived the plaintiff of rights under the Constitution or federal laws." *Keles v. Psarelli,* 2023 U.S. Dist. LEXIS 141377 (E.D.N.Y. 2023).

"To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Keles v. Psarelli,* 2023 U.S. Dist. LEXIS 141377 (E.D.N.Y. 2023). "A plaintiff may bring an equal-protection claim under two theories: selective enforcement or 'class of one.'" *Wilson v. New York,* 2018 U.S. Dist. LEXIS 49609 (E.D.N.Y. 2018). However, because a plaintiff may not allege a "class-of-one claim" in the public employment context, a public employee may only proceed under a selective enforcement theory. *Keles, supra.*

In order to succeed on a selective enforcement claim, a plaintiff is required to prove that

> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

10

*Id.*, *citing Hu v. City of New York,* 927 F.3d 81, 91 (2d Cir. 2019).

"Because a Section 1983 claim against a municipal employee in his official capacity is deemed brought against the municipality itself, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Id.* However, a showing of a policy, custom, or practice does not need to identify an express rule or regulation. *Sorlucco v. New York City Police Department,* 971 F.2d 864 (2d Cir. 1992). "It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." *Patterson v. County of Oneida,* 375 F.3d 206 (2d Cir. 2004)(internal quotation marks omitted).

"A selective enforcement theory merely requires a reasonably close resemblance between a plaintiff's and comparator's circumstances." *Keles, supra*. "The question of whether parties are similarly situated is generally a fact-intensive inquiry that depends heavily on the particular context of the case at hand." *Hu,* 927 F.3d at 97.

### B. Age is a Protected Class

"Courts in this and other circuits have found age discrimination to be cognizable under § 1983 and the Second Circuit affirmed such a ruling in 1997." *Stampfel, supra* (citing *Jungels v. Jones,* 112 F.3d 504 (2d Cir. 1997). This Court specifically has permitted age-based § 1983 discrimination claims "because of the significant number of courts that have concluded that age-based section 1983 equal protection claims are viable." *Keles, supra, citing Mackenzie v. New York City Dep't of Educ.*, 2023 U.S. Dist. LEXIS 55773 (S.D.N.Y. 2023); *see also Keles v. Davalos,* 642 F.Supp 3d 339 (E.D.N.Y. 2022); *Harry v. McDonald,* 2022 U.S. Dist. LEXIS 148768 (Dist. Conn. 2022). In this case specifically this Court has permitted Plaintiff to amend his Complaint in

11

order to bring an equal protection claim based upon age after a full briefing on these merits. *McMunn v. Vill. Of Quogue,* 2024 U.S. Dist. LEXIS 154042 (E.D.N.Y. 2024).

Defendants, in their motion for summary judgment, bizarrely claim that "age is not a protected class." Def. MOL at 15. Defendants claim that "the Supreme Court recently reiterated that age is <u>not</u> a protected class." *Id.* (emphasis in original), citing *United States v. Skrmetti*, 145 S. Ct. 1816 (2025). Such a statement is so unfathomably false that it is difficult to know where to begin in responding to it. In *Skrmetti*, the Supreme Court analyzed whether Tennessee's S.B. 1, 113 Gen Assem., 1st Extra. Sess.; Tenn. Code Ann. §68-33-101 *et seq.* (SB1) which prohibited physicians in that state from prescribing certain medications to adolescents for the exclusive purpose of providing gender-affirming care was subject to the rational basis test, or a heightened intermediate scrutiny. *Skrmetti*, *supra.* The plaintiffs in *Skrmetti* argued that Tennessee's SB1 proscribed a classification based upon sex, and thus was subject to intermediate scrutiny, whereas the state of Tennessee argued that SB1 incorporated classifications based upon age and medical use, and thus was subject to the rational basis test. *Id.* The Supreme Court held that because SB1's classifications were based on age and medical use, such classifications were subject to rational basis, and affirmed the Circuit Court's ruling. *Id.* The Supreme Court did not hold that "age is not a protected class," as claimed by Defendants, but that age is not a "suspect class" entitled to heightened scrutiny. *Id., citing Massachusetts Bd. Of Retirement v. Murgia*, 427 U.S. 307 (1976). In case Defendants are in need of a refreshed recollection, the phrases "suspect class" and "protected class" are not interchangeable. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio School District v. Rodriguez,* 411 U.S. 1, 16 (1973). Protected classes, on

the other hand, are not relevant in the Equal Protection context because the Equal Protection clause protects "any person within [the United States's] jurisdiction, including a "class of one," in that "all persons" are protected. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008).

It is becoming increasingly difficult to ascribe Defendants' continued blatant misstatements of fact and law to mere ignorance instead of bad faith actions in front of this Court, but to the extent that Defendants sincerely believe that the Supreme Court held that age is not a "protected class," they are astonishingly incorrect.

### C. Genuine Issues of Material Fact Remain, Which Make Summary Judgment Improper

Defendants attempt to make significant the fact that Plaintiff initially based his entire claim on his military service and "only after discovery was complete" did Plaintiff bring an age discrimination claim. Def. MOL at 16. While this is true, Defendants omit the fact that it is because every individual deposed on behalf of the Village testified that they took Plaintiff's age into consideration when deciding not to promote him. Jeanette Obser, a Village Board Trustee, testified that she supported Hartman for promotion over Plaintiff McMunn because Hartman was "from a younger generation." Def. Ex. L at 40. Village Board Trustee Edward Necarsulmer testified that he supported Hartman for promotion over Plaintiff McMunn because he "was the right age…" Def. Ex. K at 26. Mayor of Defendant Village Peter Scott Sartorius testified that he supported Hartman for promotion over Plaintiff McMunn "based upon his age" and because he didn't want to have "a lieutenant and a chief that were … roughly the same age." Def. Ex. I at 31, 35, 38. Trustee Randy Jay Cardo testified that he supported Hartman over Plaintiff McMunn because of the "age difference between Daniel Hartman and Chief Isola." Def. Ex. K at 44 – 46.

As for Defendant Isola, he made repeated references to Plaintiff's age as justification for his decision to promote Hartman over Plaintiff. Defendant Isola stated that he and Plaintiff are of

13

the same "generation." Def. Ex. D at 222:2 – 3. Defendants attempt to claim this is a discussion about Hartman's "proficiency with technology," but this excuse again fails when compared to the record. Defendant Isola also stated that Plaintiff, because of his age, was "a little less savvy than a younger guy or girl." *Id.* However, Defendant Isola was also unable to recall a specific incident where Plaintiff was unable to operate technology, including cell phones, computers, radios, cameras, and other technology. *Id.* at 218 – 221. Defendant Isola stated that Plaintiff was able to "get things done," referring to use of technology. *Id.* at 219. Defendant Isola did not base his assessment of Plaintiff's abilities on any actual instance of technological incompetence, and was unable to list even a single specific incident, but instead based this opinion on "a general vibe" based upon Plaintiff's age. *Id.* at 221 - 222. Defendant Isola identified Hartman's "proximity to high school or college," referring to his younger age, as an explicit justification for his preference. *Id.* at 220.

Defendants claim that Plaintiff made a comment about "old dogs can't use these new kids' toys," but this claim is unsupported by the record and Plaintiff denies making any such comment. Def. Ex. D at 221 – 222; Def Ex. H at 324 – 325. This is an issue of fact.

### D. Defendants Are Not Entitled To an Inference Against Discrimination

While it is true that "[w]hen the person who allegedly discriminated against plaintiff is a member of the same protected class as plaintiff, the court applies an inference of discrimination," "[t]hat inference is not dispositive, since members of a protected class can discriminate against other members of that class…" *Meyer v. McDonald,* 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017). It is also true, however, "a plaintiff's replacement by a significantly younger person is evidence of age discrimination" warranting an inference of discrimination. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000)(citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313

14

(1996). Hartman was 34 years old and Plaintiff was 53 years old in 2019. *See* Def. Ex. F at 11:16; Ex. 6. Combined with the repeated statements of intentional discrimination based upon Plaintiff's age, Defendants are not entitled to an inference against discrimination.

### E.  Defendants Had No Succession Plan

It is true that the mere mention of succession planning is not tantamount to pretext for age discrimination. *See Williams v. N.Y. City Transit Auth.*, 2014 U.S. Dist. LEXIS 186940 (E.D.N.Y. 2014). However, the inverse, that any mention of succession planning *de facto* absolves a defendant from liability for age discrimination, is not a logical conclusion from this same jurisprudence. Many courts have, in fact, found the opposite, that even if age is taken into account as a part of succession consideration, age is still an impermissible factor in a hiring or promotion decision. *See Donofrio v. IKEA US Retail, LLC,* 2019 U.S. Dist. LEXIS 230218 (E.D. Pa. 2019)(finding that Defendants' consideration of succession to promote younger employees into management positions instead of older employees was unlawful); *Fife v. MetLife Grp. Inc.*, 411 F.Supp. 3d 149 (Dist. Mass. 2019)(distinguishing succession planning in the form of information gathering and offers of early retirement from using age and claims of "succession planning" in hiring and firing decisions); *Rudy v. Ecology & Env't, Inc.*, 2017 U.S. Dist. LEXIS 204988 (Dist. Co. 2017)(distinguishing succession planning from age discrimination when staff were broken into "layers" of age groups, even when defendants had a preference of an age difference between levels of management to allow for succession).

Defendants do not and have never had a formal or informal "succession plan" or any policy which requires a specific gap in age between the lieutenant and the chief of police. Def. Ex. E at 268; Ex. 7.  This is undisputed. Defendant Isola was not required to promote Lt. Hartman, and had discretion in his recommendation. Def. Ex. E at 269 – 270; Ex. 7. Defendant Isola admitted in his

deposition that he could have recommended Plaintiff for promotion to Lieutenant. Def Ex. E at 270; Ex. 7. Accordingly, Defendants' argument that Plaintiff was denied promotion to Lieutenant due to the Defendants' succession plan clearly is without merit and was concocted solely for the purposes of defending this lawsuit.

The deposition testimony also confirms that the comments about Plaintiff's age are completely unrelated to any claims of succession planning. Specifically, among other testimony, Defendant Isola's testimony that he did not promote Plaintiff because he was not of his generation, Defendant Isola's testimony that Plaintiff's generation is less savvy than a younger guy or girl, Trustee Obser's testimony that she promoted Lt. Hartman because he was from a younger generation, and Trustee Necarsulmer's testimony that he voted to promote Lt. Hartman because he was the right age all have nothing to do with succession planning.

Further, there is no maximum number of years of service after which a Sergeant could not be promoted to Lieutenant. Def. Ex. E at 286. Defendant Village has no mandatory retirement age aside from the New York State Retirement System. *Id.* at 287. As a part of the civil service exam necessitated for the Lieutenant position, there was no age limit for candidates to the exam. *Id.* at 291.

Finally, while Defendant Isola testified that Plaintiff had previously suggested that he may retire when his son graduates high school, this is unsupported by the record and Plaintiff himself denies that he ever made such a statement. Defendant Isola stated that in his conversations with Plaintiff, he "wanted to get his son through high school." Def. Ex. E at 296:9 – 22. Nowhere does Defendant Isola state that he recalled Plaintiff stating that he might leave the Department after his son finished high school. This is also directly contradicted by Defendant Isola's notes where he indicated that Plaintiff "would plan on retiring from military if promotion planned." Def. Ex. Y.

16

Further, as sworn in the declaration attached herein as Exhibit 1, Plaintiff never told Defendant Isola or anyone else that he might leave the Department after his son finished high school. Ex. 1 at ¶ 3. Plaintiff's son finished high school in 2022 and Plaintiff is still with the Department, with no intention of leaving the Department in the foreseeable future. Ex. 1 at ¶ ¶ 4 – 6.

### F. Age is a "but for" Cause of Discrimination

To establish a claim under the Equal Protection clause, a plaintiff must prove that "but for" discriminatory intent on the part of the employer, he would not have been subjected to the adverse action. *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019). "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause. This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). "[T]he traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *Id.*

Here, Defendants cannot escape liability by pointing to other considerations that, while disputed, they may or may not have considered in promoting Hartman over Plaintiff. The sheer number of references to Plaintiff's age, and the contradictions within Defendants' excuses show unequivocally that but for Plaintiff's age, he would have been promoted over Hartman. A reasonable jury could absolutely determine that age was a but for cause for Plaintiff's discrimination, and thus summary judgment is improper.

### G. Defendants Coughlin and Isola Are Not Entitled To Qualified Immunity

17

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223 (2009). "Government officials who are 'performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Looney v. Black*, 702 F.3d 701 at 705-06 (2d Cir 2012). Meaning, "[p]ublic officials are entitled to qualified immunity 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020).

It is indisputable that "age discrimination is contrary to clearly established federal law." *Purdy v. Town of Greenburgh,* 166 F. Supp. 2d 850 (S.D.N.Y. 2001). "A right is clearly established if the Supreme Court or the Second Circuit has recognized that right." *Vill. Of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016). The Second Circuit has affirmed that age discrimination is a viable claim under § 1983. *Stampfel v. City of New York,* 2005 U.S. Dist. LEXIS 36371 (S.D.N.Y. 2005)(citing *Jungels v. Jones,* 112 F.3d 504 (2d Cir. 1997)). The right to be free from discrimination based on age is clearly established and thus Defendants are not entitled to qualified immunity.

**H.  The Discrimination was Led by Defendant Isola**

"For Section 1983, a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Keles, supra* (quoting *Warren v. Pataki,* 823 F.3d 125, 136 (2d Cir. 2016). A plaintiff can prove personal involvement by pleading that:

18

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven,* 720 F.3d 133 (2d Cir. 2013).

Prior to the Board's interview of the candidates Hartman and McMunn, Defendant Isola spoke with Mr. Cardo, Mr. Sartorius, Mr. Necarsulmer, and Ms. Obser and expressed his preference that Hartman be promoted over Plaintiff McMunn. Def. Ex. L at 35; Def. Ex. K at 26; Def. Ex. I at 40; Def. Ex. K at 31. Ms. Obser testified that Defendant Isola "felt strongly about Lieutenant Hartman." Def. Ex. L at 35. Ms. Obser testified that Defendant Isola's preference for Hartman influenced her decision to support him over Plaintiff McMunn. *Id.* at 40. Mr. Sartorius does not recall an instance throughout his entire tenure as Mayor where the Board did not follow the recommendation of a police chief with respect to the hiring or promotion of an officer in the department. Def. Ex. I at 35. Defendant Isola could not recall an instance where the Board of Trustees failed to follow one of his recommendations. Def. Ex. E at 272:13. Accordingly, it is clear that based upon the Board's historical deference to the Police Chief it was a rubber stamp body which never acted independently of the Police Chief. Put simply, the decision to promote Hartman was made by Defendant Isola and rubber stamped by the Board. This fact is undisputed and confirmed by the testimony of the Board members, the Mayor and Defendant Isola.

   III.   **Plaintiff Has Established a Hostile Work Environment Claim Based Upon USERRA**

19

This Court has recognized that USERRA is "properly read as recognizing hostile work environment claims." *Hughes v. City of New York*, 20-CV-3341(AMD)(RLM)(E.D.N.Y. 2021).[1] In *Hughes,* this Court reasoned that:

> This reading accords with Congress's 2011 amendments to the statute. See Pub. L. No. 112-56, Title II, § 251, 125 Stat. 711, 729 (Nov. 21, 2011). In Carder v. Cont'l Airlines, Inc., the Fifth Circuit held that USERRA does not recognize hostile work environment claims because the statutory definition of "benefits of employment" did not include the phrase, "terms, conditions, and privileges," as the Title VII statute does. 636 F.3d 172, 177-79 (5th Cir. 2011). A few months after this ruling, Congress amended the definition of "benefits of employment" to include the phrase. See 38 U.S.C. § 4303(2). Thus, USERRA properly is read as recognizing hostile work environment claims. Tridico v. D.C., 130 F. Supp. 3d 17, 31 (D.D.C. 2015) (as reflected in the 2011 amendments, USERRA "provide[s] for a hostile work environment claim."); Montoya v. Orange Cty. Sheriff's Dep't, 987 F. Supp. 2d 981, 1012- 14 (C.D. Cal. 2013) (same).

Contrary to Defendants' contentions, Plaintiff has articulated multiple incidents of harassment based upon his military status while he has been employed with Defendant Village. *See* Second Amended Comp., Dkt. No. 64 at ¶¶ 19 – 36. Plaintiff elaborated on these events throughout his deposition testimony. *See* Def. Ex. F.

The Second Circuit has instructed not to "view individual incidents in isolation" or "review the record in a piecemeal fashion," and to review the totality of the circumstances. *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497 (E.D.N.Y. 2014)(citing *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir. 2012).

Here, taking the totality of circumstances into consideration in the light most favorable to Plaintiff, Plaintiff has established a genuine issue of fact that necessitates a trial.

---

[1] This case, directly on point on this issue and from this very Court, though adverse to Defendants' position, is suspiciously omitted from Defendants' motion.

20

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny Defendants' motion for summary judgment in its entirety.

Dated: Syosset, New York
　　　 September 12, 2025

BELL LAW GROUP, PLLC

*Adam P. Grogan*

By: _____
　　 Adam P. Grogan, Esq.
　　 Partner
　　 116 Jackson Avenue
　　 Syosset, New York 11791
　　 Tel.: (516) 280-3008
　　 apg@belllg.com

21