**FILED**
**CLERK**

5/13/2026 5:21 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JASON MCMUNN,

                                    Plaintiff,

            - against -

VILLAGE OF QUOGUE,
CHRISTOPHER ISOLA and
ROBERT COUGHLAN
                                    Defendants.
------------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

Civil Action
No. 21-2805 (GRB)(ST)

**GARY R. BROWN, United States District Judge**:

Plaintiff Jason McMunn, a sergeant with the Quogue Village Police Department ("QVPD"), brings this employment discrimination lawsuit against the Village of Quogue (the "Village"), his ultimate employer, as well as two individual defendants, former QVPD Chief Robert Coughlan[1] ("Coughlan") and current Chief Christopher Isola ("Isola").  Plaintiff asserts claims under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") 38 U.S.C. §§ 4301, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

---

[1] Perplexingly, while Coughlan's name is spelled correctly in the case caption, both defendants and plaintiff consistently misspell his name as "Coughlin" in their briefing. Coughlan's deposition testimony indicates that the caption spelling is correct, and so that is the spelling used herein.

1

Before the Court is defendants' motion for summary judgment, seeking to dismiss all claims in their entirety.  For the reasons that follow, the Court GRANTS the motion in part and DENIES the motion in part.

**Factual Background**

    **I.**       **Plaintiff's Military Service and Employment with the QVPD**

Plaintiff joined the QVPD in 1990, was promoted to sergeant in 2007 and continues to serve in that position, to date.  Docket Entry ("DE") 77-2 (Def'ts 56.1 Stmt.) ¶¶ 13-14. [2]  Prior to plaintiff's promotion, the United States Department of Veterans Affairs ("VA") determined that plaintiff's military service had been a factor in the QVPD's previous failure to promote plaintiff.  *See* DE 77, Ex. C (Coughlan Dep. Tr.) 77:3-87:10.  Plaintiff's promotion to sergeant formed part of a settlement in response.

Defendant Coughlan joined the QVPD in 1978, was appointed Chief of Police in 2001 and retired from the role of Chief in 2018.  Def'ts 56.1 Stmt. ¶¶ 9-10.  Defendant Isola joined the QVPD in 1989, was promoted to sergeant in 1994, to lieutenant in 2001 and to Chief in 2018.  *Id*. ¶¶ 11-12.

While employed with the QVPD, plaintiff served in the National Guard, which required him to take periodic leaves of absence, ranging from a few days, to a month to a full year during the conflict in Iraq.  Plaintiff was never denied military leave during his employment, and plaintiff and his family received health benefits from the Village

---

[2] Citation to a party's Rule 56.1 statement incorporates the corresponding paragraphs of the opposing party's Rule 56.1 counterstatement.  Citation to a Rule 56.1 statement incorporates by reference the documents cited therein.

while he was on leave. *Id.* ¶¶ 36-37. In 2016, plaintiff notified Coughlan that he would be deployed for six months and discussed the continuation of health benefits, which the Village Mayor granted. *Id.* ¶¶ 38-40. Isola suggested that plaintiff use his vacation or sick leave to remain on the payroll where military leave had been exhausted and plaintiff would otherwise have had to go on unpaid leave. *Id.* ¶ 41. However, the parties had a dispute over plaintiff's submission of his military orders. The parties appear to agree that plaintiff submitted unsigned orders, but the parties dispute whether Isola merely told plaintiff that the orders needed to be signed or whether Isola "accused [p]laintiff of fabricating his orders in his basement." *Id.* ¶ 42.

## II.    Overtime

While plaintiff was on military leave, he was not available to work overtime. *Id.* ¶ 49. The parties agree that some officers outside of plaintiff's protected classes logged fewer or similar overtime hours than plaintiff and that other sergeants had responsibilities that could lead to additional overtime hours. *Id.* ¶¶ 50-53. The parties also agree that plaintiff never asked Isola or Coughlan for additional overtime during his employment. *Id.* ¶¶ 54-55. Plaintiff could, as a sergeant in charge of ongoing investigations, work overtime when necessary to handle an "emergent event" and could request overtime if he believed it was necessary. *Id.* ¶¶ 60-61. Plaintiff could not recall any such requests being denied. *Id.*

## III.    Training

Plaintiff alleges that QVPD denied him the opportunity to participate in four trainings: "(1) a rifle training program offered by Suffolk County; (2) a training program

3

offered by the company Taser; (3) an E-justice program; and (4) a program by the company Glock." DE 78-6 (Pl. Br.) at 6-7. Plaintiff attended the Suffolk County riflery program in 2022 but did not attend the training in 2018 due to a knee injury and was not selected to participate in the training in 2019. Def'ts 56.1 Stmt. ¶¶ 65-68. Plaintiff received training in E-justice at various times prior to 2016 but had already ceased receiving that training before 2016, around the time when plaintiff's areas of responsibilities were modified to include supervising the QVPD detectives. *Id.* ¶¶ 75-78. Overall, QVPD provided plaintiff training in every year of his employment, since at least 2008. *Id.* ¶ 62.

### IV.    Denial of Lieutenant Promotion

Coughlan retired as QVPD Chief on May 1, 2018, and was replaced by Isola. *Id.* ¶ 80. Though the Village did not initially fill the lieutenant position vacated by Isola, the Village Board of Trustees (the "Board") ultimately decided to hire a replacement. *Id.* ¶ 81. Before his retirement, Coughlan recommended the Village promote another QVPD sergeant, Daniel Hartman, to be the next Lieutenant. *Id.* ¶ 82. Three candidates (plaintiff, Hartman and a third sergeant) were eventually presented to the Board, and the Board interviewed them all. *Id.* ¶¶ 83-84. As Chief, Isola recommended in his discretion that the Board hire Hartman. *Id.* ¶ 85; DE 78-5 (Pl. 56.1 Stmt.) ¶¶ 12-15. Hartman was 34 at that time, plaintiff was 53 and Isola was 55. Def'ts 56.1 Stmt. ¶¶ 106-107; Pl. 56.1 Stmt. ¶ 11. As a matter of practice, the Board had never failed to follow Isola's recommendation. Pl. 56.1 Stmt. ¶ 16. And the Village Mayor testified that he did not recall an instance during his tenure when the Board did not follow the

recommendation of a police chief with respect to the hiring or promotion of an officer in the department. Pl. 56.1 Stmt. ¶ 35. The Board ultimately promoted Hartman.

In explaining his support for Hartman, Isola testified that he "had a better relationship and trust with Hartman," that plaintiff was slow to complete assignments and that he also considered plaintiff's habit of bypassing the chain of command by communicating concerns with Coughlan directly, rather than through Isola, his immediate supervisor. Def'ts 56.1 Stmt. ¶¶ 88, 90-91, 94. Isola also took detailed notes, which do not mention plaintiff's age. *Id.* ¶¶ 86-87.

On the other hand, plaintiff scored 90.50 on the lieutenant's exam, while Hartman scored 81.80. Pl. 56.1 Stmt. ¶ 10. And the QVPD maintained no mandatory retirement age or other policies that would restrict when a sergeant could be promoted to lieutenant. *Id.* ¶¶ 17-20.

In his deposition, Isola also lauded Hartman's proficiency with technology and cited a joke purportedly made by plaintiff (though the parties dispute whether plaintiff in fact made the joke) that "old dogs can't use these new kids' toys." Def'ts 56.1 Stmt. ¶¶ 99-100. Isola also made reference to being of the same "generation" as plaintiff, as an explanation for why he expected that plaintiff would be less skilled with technology than Hartman, though Isola cited no specific examples indicating that plaintiff was deficient with technology. Pl. 56.1 Stmt. ¶¶ 21, 23. Similarly, Board members stated that they selected Hartman because they "liked the fact that he was from a younger generation on the force," DE 78, Ex. L 40:13-17, "thought [Hartman] was the right age to fit into the way the Village had done . . . succession over the years," *Id.* Ex. K 26:19-22,

5

and agreed that "the age difference between [] Hartman and [] Isola was a factor" in their "decision to go with [] Hartman," *Id*. Ex. J. 44:25-45:9.  Board members did also cite various other rationales for promoting Hartman, including that his good relationship with other officers, his aptitude for technology and his demeanor in the interview. Def'ts 56.1 Stmt. ¶¶ 113-116.

The parties generally dispute whether plaintiff's relationship with Coughlan and Isola had already deteriorated between 2001 and the lawsuit.  *Id*. ¶¶ 15-16.  The parties also dispute why plaintiff refused to provide Isola with opinions on officers' fitness and recommendations of what officer should receive promotions to sergeant, though the parties agree that plaintiff did not provide that information.  *Id*. ¶¶ 29-30.  Plaintiff was subject to minor discipline for several infractions while employed by the QVPD.  *Id*. ¶¶ 19-20.  At times, plaintiff also raised workplace issues with Coughlan, bypassing Isola, his immediate supervisor.  *Id*. ¶ 24.

**Standard of Review**

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

**Legal Analysis**

I.      **USERRA Claim**

38 U.S.C. § 4311(a) provides that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in

employment, promotion, or any benefit of employment by an employer on the basis of that membership."

Courts adjudicating USERRA claims, employ the burden-shifting framework outlined in *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 4301 (1983). Under that standard:

> [a] claimant carries his burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action; but the employer may nonetheless escape liability by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status.

*Caines v. City of New York*, 649 Fed. App'x 74, 76 (2d Cir. 2016) (internal quotations omitted).

In addition to prohibiting acts of discrimination, USERRA bars an employer from "tak[ing] any adverse employment action or other retaliatory action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter." 38 U.S.C. § 4311(b). "[T]o make out a prima facie case of retaliation under USERRA, a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 537 (S.D.N.Y. 2017). Factor three is the dispositive issue.

Plaintiff alleges two variants of discriminatory, adverse employment action by defendants: denial of overtime and denial of training opportunities. For the reasons that follow, defendants are entitled to summary judgment as to both allegations.

7

### a.  Individual Defendants

As a preliminary matter, plaintiff purports to assert his USERRA claims against both the Village and the individual defendants.  DE 64 (Second Amended Complaint "SAC") ¶ 96.  However, the Second Circuit has explicitly foreclosed that possibility.  *See Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 23 n.1 (2d Cir. 2017) ("the statute contains no provision permitting USERRA claims to be brought against individuals.").  And if plaintiff instead meant to individualize the USERRA cause of action through Section 1983, the Second Circuit has forbidden that practice even more conclusively.  *See Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) ("USERRA is not a statute for which redress is available against [] [i]ndividual [d]efendants under § 1983.").  As a result, summary judgment is granted for the individual defendants on the USERRA claim and any derivative individual actions under Section 1983 and the NYSHRL, to the extent that plaintiff intended to assert them.

### b.  Overtime

"A deprivation of the opportunity to earn overtime can be an adverse employment action. . . . Failure to substantiate an allegation of retaliatory overtime denial with anything more than a conclusory allegation in an affidavit is, however, highly problematic."  *Rivers v. New York City Hous. Auth.*, 176 F. Supp. 3d 229, 252 (E.D.N.Y. 2016), *aff'd sub nom. Crenshaw v. New York City Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017) (collecting cases).  A plaintiff must substantiate his allegation with more than "[his] own conclusory testimony," or else the claim is "deficient."  *Hayle v. Nassau*

*Health Care Corp.*, 08-CV-2396 (DRH) (GRB), 2013 WL 6231164, at *6 (E.D.N.Y. Dec. 2, 2013) (granting summary judgment on Title VII claim for denial of overtime). [3]

To prove that denial of overtime is in fact an adverse employment action, rather than merely the normal practice of a business, the plaintiff must demonstrate that similarly situated comparators *do* receive overtime assignments. "[B]road, conclusory statements that he was treated differently from his similarly situated co-workers with respect to the provision of overtime do not create a genuine issue of material fact about whether the overtime denials constitute adverse employment actions." *Rivers* 176 F. Supp. 3d at 253 (E.D.N.Y. 2016). Some courts have also suggested that "denial of overtime does not rise to the level of an adverse employment action [where a] plaintiff[] cannot provide[] specific instances when [he] applied for but did not receive overtime." *Campanella v. O'Flynn*, 10-CV-6236 (FPG), 2017 WL 3172600, at *11 (W.D.N.Y. July 26, 2017).

Plaintiff fails to raise any disputes of fact that would overcome summary judgment as to the overtime issue. The parties agree that "[s]ome officers in the [Quogue Police] Department outside of [p]laintiff's protected classes logged fewer overtime hours than plaintiff," that "[o]ther officers logged similar overtime hours to plaintiff," that "[a]s the sergeant in charge of ongoing investigations, [p]laintiff was

---

[3] Courts in this Circuit have imported the Title VII framework for comparison of similarly situated employees to USERRA analyses. *See Jones v. New York City Hous. Auth.*, 05-CV-8104 (DC), 2006 WL 1096804, at *3 (S.D.N.Y. Apr. 25, 2006). And plaintiff's citation for denial of overtime claims being cognizable under USERRA was a Title VII, not USERRA, case. *See* Pl. Br. at 4 (citing *Rivers*, 176 F. Supp. 3d 229).

empowered to work overtime when necessary to handle an emergent event," that "[p]laintiff could also request overtime if he believed it was necessary [and] Plaintiff could not recall any such requests being denied" and that "other Sergeants in the Department had or have other areas of responsibility or duties that might lead to additional hours of overtime." Def'ts 56.1 Stmt. ¶¶ 50-52.

In addition, the parties agree that "[d]uring his employment with the Department, [p]laintiff did not ask [] Isola or [] Coughlan for additional overtime" and that "[d]uring his employment with the Department, [p]laintiff did not express to [] Isola or [] Coughlan that he was unhappy with the amount of overtime he received." *Id*. ¶¶ 54-55.[4] Most importantly, in his deposition, plaintiff could only speculate as to whether plaintiff received less overtime than comparators within the last five years and

---

[4] In his brief, plaintiff argues that he "testified that there have been times when he has had overtime denied," as a basis for denying summary judgment. Pl. Br. at 5. This is an aggressive paraphrase, at best. On the cited page, plaintiff was asked "Have you ever requested overtime for investigation from the chief or the lieutenant and been denied?" to which plaintiff responded: "I don't remember." Pl. Dep. Tr. 42:7-9. Plaintiff was also asked: "You don't remember overtime specifically being denied to you at any point for an investigation?" and plaintiff replied: "Not that I remember, no." *Id*. at 42:18-21. The closest plaintiff came to making the cited statement was an answer stating: "Yes, that is possible [that a request for overtime was denied]. At no time that I remember. There's been times that we've tried to do stuff, even while I'm working, sometimes it gets denied, you know. It is what it is. I just keep moving." *Id*. at 42:13-17. It is well-established in the Second Circuit that testimony merely stating that "the existence of some fact is 'possible' is insufficient to create an issue of material fact where one would not otherwise exist." *CDS Bus. Servs. Inc. v. Sebbag*, 21-CV-1992 (JS) (ST), 2023 WL 7181646, at *4 (E.D.N.Y. Aug. 16, 2023) (citing *FDIC v. National Union Fire Ins. Co.*, 205 F.3d 66, 71 (2d Cir. 2000)). Accordingly, plaintiff's citation is plainly insufficient to create a dispute of material fact as to denial of overtime requests.

could only positively identify one sergeant who received more overtime than he did

during his tenure:

> Q: In an average month, how many hours of overtime do you usually work?
> A: It would be difficult to average out an a [sic] month.  I would say in a year, I probably get forty to sixty hours of overtime a year.
> Q: Do you know if that's more or less than other sergeants typically receive?
> A: Depending on what time frame we're talking about[.]
> Q: Let's say the last five years.
> A: Last five years, I think it might be less, but I honestly haven't compared in the last five years.  Before the five years, it was always less, especially compared to another officer that was a sergeant.
> Q: When you say compared to another officer, are you referring to a specific person or is the other officer generic, just anybody that you can compare it to?
> A: No, one specific officer.
> Q: Who was that?
> A: Ed Seltenreich.
> Q: Was Mr. Seltenreich another sergeant, like yourself, at the time?
> A: Yes, yes, he was.
> Q: At the time how many sergeants were there?
> A: Four.
> Q: You don't know whether you worked less overtime than the other two sergeants during that time; is that correct?
> A: I believe I worked about the same as the other sergeants, but I would say less.  A little less, with the exception of one other sergeant.

DE 77, Ex. F (Pl. Dep. Tr.) 44:10-45:19.  When plaintiff was asked about whether he

could identify any other possible comparators who received more overtime, he was

only able to offer conjecture:

> Q: What about after Sergeant Seltenreich left [the] department, do you still think there were others given more overtime than you that you would have been eligible for?
> A: Yes.
> Q: Who?
> A: Anyone but me.

11

> Q: Do you keep track of the overtime that any other sergeants receive?
> A: No, I do not.
> Q: Do you have an estimate as to how many hours of overtime the other sergeants currently receive per year?
> A: No, I do not.

Pl. Dep. Tr. 60:19-61:8.  That testimony does not create a dispute of material fact, and plaintiff's elaboration was no less speculative:

> Q: You indicated earlier that you receive approximately, forty to sixty hours of overtime in an average year; correct?
> A: Correct.
> Q: Your belief is that the other sergeants receive more than that?
> A: Yes.
> Q: What is that based on?
> A: Observation.
>
> ***
>
> Q: To the best of your knowledge or to your observation, do all three of [the other QVPD sergeants] receive more overtime than you do?
>
> A: I haven't looked to see where they're at.
>
> Q: Do you believe that they receive more overtime than you do?
>
> A: I have no idea.

Pl. Dep. Tr. 61:9-17; 64:6-12.

"Conclusory assertions, conjecture, or speculation do not create a genuine dispute of fact and are insufficient to defeat a properly supported motion for summary judgment." *Siino v. City of New York*, 14-CV-7217 (MKB)(LB), 2020 WL 3807451, at *12 (E.D.N.Y. Feb. 27, 2020), *adopted by*, 14-CV-7217 (MKB)(LB), 2020 WL 1861865 (E.D.N.Y. Apr. 14, 2020) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("A court cannot

credit a plaintiff's merely speculative or conclusory assertions."). However, plaintiff's allegations that other similarly situated employees were given more overtime than he was amount only to conjecture.

Plaintiff references one specific interaction purportedly in support of his claim: "there was a conversation, I can't remember when, with Lieutenant Hartman who offered me some patrol overtime and said you're the lowest guy on the list, would you like some overtime." Pl. Dep. Tr. 64:21-25. That testimony is similarly insufficient to create a dispute of material fact at summary judgment. First, as defendants raise, that testimony suggests that the department was looking to give defendant *more* overtime, which would undermine an inference of discrimination at the causation stage. Second, the statement is hearsay. And third, that evidence is particularly insufficient in the context of plaintiff's military service, which necessarily meant that he was available to work overtime less often than other QVPD officers. Plaintiff cites no sources that compile any rate-based statistic on overtime hours. Indeed, plaintiff cites no documentary evidence of any kind to indicate that plaintiff actually worked less overtime than similarly situated co-workers, relying instead on plaintiff's at best equivocal deposition testimony. *See McDuffie v. Eli Lilly & Co.*, 04-CV-05995 (LTS)(HBP), 2009 WL 857069, at *8 (S.D.N.Y. Mar. 31, 2009) (Finding, on causation grounds, that the plaintiff had not made out a *prima facie* USERRA claim where the plaintiff had not, *inter alia*, "proffered any non-hearsay, non-conclusory evidence of differential treatment of similarly-situated employees.").

Under the circumstances, the Court finds that plaintiff has failed to raise a dispute of material fact as to an adverse employment action based on denial of overtime.[5]

### c.        Lack of Training

For a similar reason, the Court finds that plaintiff fails to raise a dispute of material fact as to his denial of training opportunities claim.  In the Title VII context, "[a] plaintiff alleging unequal access to training must demonstrate that the employer offered training to other employees and that the plaintiff was denied that training under circumstances giving rise to an inference of discrimination."  *Hubbard v. Port Auth. of New York & New Jersey*, 05-CV-4396 (PAC), 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008).[6]  That is because such a claim "without any frame of reference for comparison, let alone any corroborating or verifying evidence of disparately treated incidents, is an amorphous claim which cannot stand on the basis of mere conclusory allegations that plaintiffs were treated differently."  *Fincher v. Depository Tr. & Clearing Corp.*, 06-CV-9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010).  To prevail on a better-access-to-opportunity claim based on denial of training,

---

[5] Given the analysis above, the Court declines to consider defendants' alternative argument that defendant adequately demonstrated "legitimate, non-discriminatory reasons" for the alleged adverse action, which the Court understands to be an argument as to causation under factor four of the USERRA prima facie test.

[6] *See* note 3, *supra.*  As with the overtime issue, plaintiff's citation for lack of training claims being cognizable under USERRA was a Title VII, not USERRA, case.  See Pl. Br. at 6 (citing *Robles v. New York City Health & Hosps. Corp.*, 19-CV-7158 (ENV)(RER), 2023 WL 5337766 (E.D.N.Y. Mar. 17, 2023)).

then, the plaintiff must identify a comparator and must show "that the comparator is similarly situated to her 'in all material respects.'" *Walker v. Triborough Bridge & Tunnel Auth.*, 21-CV-474 (VEC), 2021 WL 5401483, at *4 (S.D.N.Y. Nov. 18, 2021) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also Goris v. Deloitte*, 25-CV-1532 (JPC), 2026 WL 621575, at *7 (S.D.N.Y. Mar. 5, 2026) (granting motion to dismiss USERRA claim where plaintiff "fail[ed] to identify comparators and allege why they are similarly situated.").

Plaintiff has failed to demonstrate that similarly situated employees received the training opportunities that he was allegedly denied.  As with overtime, plaintiff was not able to testify whether other sergeants *requested* more training opportunities than he did, and plaintiff's testimony that he *received* fewer training opportunities was inferred only from "observations," based on reviewing "the schedule":

> Q: Do you believe that you received fewer training opportunities than other sergeants in the last three years?
> A: In the last three years, I would say, yes.
> Q: What is that based on, that belief?
> A: Observations.
> Q: Can you describe those observations?
> A: They're in the schedule.
> Q: Do you know if the other sergeants have requested more training opportunities than you have?
> A: I have no idea.

Pl. Dep. Tr. 81:11-22.  Unlike the overtime issue, plaintiff does purport to reference some documentary evidence to support the denial of training claim.  However, plaintiff has not put the documents themselves into evidence and his recitation of their contents is inadmissible hearsay.  *See Abouelmakarem v. Mssminja Inc.*, 21-CV-10625 (LJL), 2023 WL

15

4561765, at *2 n.1 (S.D.N.Y. July 17, 2023) ("the rules against hearsay and the other federal rules of evidence [] would prevent a person from testifying with respect to the content of a document that itself is not received in evidence.").  And it is black letter law that "hearsay cannot create a genuine issue of material fact."  *Serrano v. Fefa Express Inc.*, 25-CV-00881 (LJL), 2026 WL 972391, at *2 (S.D.N.Y. Apr. 10, 2026).

Without evidence that similarly situated officers were permitted to attend the trainings at issue, plaintiff cannot demonstrate that his training assignments constituted an adverse employment action.  This conclusion is bolstered by the fact that the parties agree that plaintiff has been provided training in every year of his employment since at least 2008.  Def'ts 56.1 Stmt. ¶ 62.  Plaintiff nonetheless alleges that he was denied the opportunity to participate in four trainings: "(1) a rifle training program offered by Suffolk County; (2) a training program offered by the company Taser; (3) an E-justice program; and (4) a program by the company Glock."  Pl. Br. at 6-7.  However, plaintiff did not attend the riflery training in 2018 due to a knee injury and did complete the training in 2022.  Def'ts 56.1 Stmt. ¶¶ 65-68.  Furthermore, plaintiff received training in E-justice at various times prior to 2016, and QVPD had ceased inviting plaintiff to E-justice trainings *prior* to 2016—when plaintiff alleges his military service caused the alleged adverse actions.  The trainings instead stopped around the time when plaintiff's areas of responsibilities were modified to include supervising the QVPD detectives.  *Id.* ¶¶ 75-78.

In addition, neither party's 56.1 statement includes a single fact regarding possible comparators, and plaintiff's 56.1 statement makes no mention of training at all.

16

Indeed, plaintiff does not even enter basic facts into evidence to dispute them—such as whether plaintiff actually requested and was denied the opportunity to attend the Taser and Glock trainings. Though the Court was able to substantiate some of the arguments in the briefing based on its *sua sponte* examination of the entire record, the Court finds that summary judgment is appropriate on the alleged denial of training opportunities for failure to raise sufficiently similar comparators to show that plaintiff's training schedule constituted an adverse action.

Even if plaintiff was able to show that he was denied permission to attend certain trainings, however, plaintiff's claims would still fail due to this Circuit's requirement that the plaintiff demonstrate a "materially adverse" employment action flowing from that denial of training.

Courts in this Circuit have held uniformly that employment actions adverse only to a *de minimis* degree are not cognizable under USERRA, and "a service member claiming retaliation under Section 4311(b) must show that he suffered a materially adverse employment action such as termination, demotion accompanied by a loss of pay, or a material loss of benefits or responsibilities that significantly alters the terms or conditions of his employment." *Hansen v. City of New York*, 24-CV-2808 (JMF), 2025 WL 588119, at *6 (S.D.N.Y. Feb. 24, 2025) (cleaned up); *see also Bjelobrk v. Suffolk Cnty.*, No. 23-CV-08811 (HG), 2025 WL 711791, at *10 (E.D.N.Y. Mar. 5, 2025), *on reconsideration*, No. 23-CV-08811 (HG), 2025 WL 1043624 (E.D.N.Y. Apr. 8, 2025) (similar).

Plaintiff argues that an adverse employment action need not be materially adverse to be cognizable, citing *Muldrow v. City of St. Louis*, a Title VII case, which held

17

that an adverse employment action is an action that imposes "some harm respecting an identifiable term or condition of employment." 601 U.S. 346, 355 (2024). However, plaintiff has cited no cases applying *Muldrow* that stand for its requested proposition, and *Muldrow* was narrowly decided on the question of employee transfers under Title VII. As a result, even assuming that Title VII is analogous to USERRA and that *Muldrow* could reach the facts of this case, the Second Circuit's holding in the Title VII context that "[a]n adverse employment action is a materially adverse *change* in the terms and conditions of employment" would still control outside of the narrow situation of employee transfers, *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008), for "even if a Supreme Court case is in tension with Second Circuit precedent, district courts are required to follow the Circuit's precedent unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision," *United States v. Dupree*, 16-CR-84 (ARR), 2016 WL 10703796, at *4 (E.D.N.Y. Aug. 29, 2016), *aff'd*, 767 F. App'x 181 (2d Cir. 2019).

Plaintiff does not engage with defendants' argument that denial of such trainings must result in materially adverse consequences to be cognizable under USERRA. *See Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 280 (S.D.N.Y. 2016) (granting motion to dismiss in Title VII case because "[i]n order for Plaintiff to show that it is plausible that she suffered material harm she must show that the denial in training caused her opportunities for career growth or compensation to be affected. However, Plaintiff fails to show any material harm from these denials.") (internal citation omitted). Instead, plaintiff argues that defendants' cases are inapposite because the

18

*Muldrow* standard controls.  Because the breadth of *Muldrow* is in question, *Muldrow* is at most "in tension" with Second Circuit precedent, and so the Court finds that plaintiff has not demonstrated the material consequences required by current, binding Circuit precedent.[7]

Plaintiff's failure to identify an adverse employment action means that his USERRA claims cannot survive.  Plaintiff similarly has not identified any basis by which the NYSHRL claim, which depends upon proving military discrimination under USERRA, would employ any different legal analysis than the USERRA claim itself.  Therefore, the Court grants summary judgment to the defendants on the USERRA claim and any ancillary theories.

## II.    Hostile Work Environment

The parties squabble about whether USERRA permits a cause of action for a hostile work environment.  *See* Pl. Br. at 20; Def'ts Br. at 13-15.  The Court declines to consider that question because plaintiff has not identified any specific facts that would permit a reasonable jury to conclude that the QVPD constituted a hostile work environment.  Plaintiff cites two bases for the hostile work environment claim in his briefing.  First plaintiff cites the SAC.  That citation is plainly insufficient because

---

[7] Courts applying *Muldrow*'s more lenient "some harm" standard have still imposed a threshold requirement that the plaintiff identify an injury.  *See John v. Brooklyn Eye Ctr.*, 22-CV-06190 (OEM) (VMS), 2025 WL 317515, at *5 (E.D.N.Y. Jan. 28, 2025) (applying *Muldrow* in a Title VII case and concluding that "while denial of training can constitute an adverse employment action, there is no adverse employment action when an employee cannot show resulting adverse consequences.").  The viability of this approach is uncertain, and the Court declines to address whether it would control if the Second Circuit ultimately determines that *Muldrow* applies to USERRA claims.

"[c]iting to one's pleadings, of course, is insufficient to establish a genuine issue of material fact at the summary judgment stage. *Nathe v. Weight Watchers Int'l, Inc.*, 06-CV-4154 (DAB), 2010 WL 3000175, at *1 n.1 (S.D.N.Y. July 26, 2010); F.R.C.P. Rule 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleadings."). Second, the brief claims generally that "[p]laintiff elaborated on the[] [alleged discriminatory] events throughout his deposition testimony. *See* Def. Ex. F." Pl. Br. at 20. That conclusory statement without any specific citation is similarly insufficient to create a dispute of material fact. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *Torres v. Brend Restoration Servs. Inc.*, 22-CV-1191 (DEH), 2024 WL 4355030, at *1 n.2 (S.D.N.Y. Sept. 30, 2024) ("in order to survive or prevail on a motion for summary judgment, a party's counsel must *specifically identify relevant facts* and explain why those facts justify denying or granting the summary judgment motion.") (emphasis in original; other alterations omitted); *see also Cain v. United Mortg. Corp.*, 21-CV-3325 (BMC), 2025 WL 2932758, at *10 (E.D.N.Y. Oct. 15, 2025), *on reconsideration*, 21-CV-3325 (BMC), 2025 WL 3165670 (E.D.N.Y. Nov. 13, 2025) ("judges are not like pigs, hunting for truffles buried in the record.") (quoting *Kane v. DeBlasio*, 19 F.4th 152, 167 n.15 (2d Cir. 2021)).

The Court nonetheless examined the record and found no evidence that plaintiff's "workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's

20

employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (alterations omitted). Plaintiff's brief discusses three incidents of possible relevance, the most colorable of which is an incident where Isola allegedly accused plaintiff of "making up" military orders. Plaintiff did not bother to raise any of those incidents in his 56.1 statement and, in any event, "[r]un-of-the-mill workplace conflicts, troubling though they may be, do not rise to the level of an objectively hostile workplace." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language," do not establish a hostile work environment); *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."). Plaintiff's recitation plainly fails to meet these standards. As a result, the Court grants defendants' motion for summary judgment on the hostile work environment claim.

## III.   Age Discrimination

Plaintiff asserts a final claim under 42 U.S.C. § 1983, alleging that individual defendants Isola and Coughlan violated his Fourteenth Amendment rights by discriminating against him based on his age. "Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citing 42 U.S.C. § 1983). "To prevail on such a claim, section 1983 requires that the plaintiff prove, *inter alia*, that the defendant caused the deprivation of his or her rights." *Taylor v. Brentwood Union Free School Dist.*,

21

143 F.3d 679, 686 (2d Cir. 1998) (citation omitted).  Those rights must be independently entrenched in the Constitution, for Section 1983 does not include a free-standing cause of action.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 2010) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.").  Here, plaintiff asserts that his claims arise from the Equal Protection Clause of the 14th Amendment.

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

### a.  Protected Class

Defendants assert that the equal protection claim fails because age is not a protected class under the Fourteenth Amendment, and therefore plaintiff is not a member of a protected class.  In support of that contention, defendants cite a single, recent Supreme Court case—*United States v. Skrmetti*, S. Ct. 1816, 1829 (2025).  Def'ts Br. 15-16.  Plaintiff responds that the defendants misstate the law, for while age is not a "suspect" class under the Fourteenth Amendment, age is indeed "protected" by the

22

text.  Pl. Br. at 12.  The distinction appears superficially pedantic but is in fact fundamental to equal protection jurisprudence.

*Skrmetti* held that age-based classifications are not suspect and do not generate heightened scrutiny under the Fourteenth Amendment.  But defendants misinterpret what the effect of that holding was.  Contrary to their representation, the Fourteenth Amendment protects classes from discrimination even when the classes are not suspect—indeed that is the *entire point* of rational basis review.

Whenever a statute is invalidated under the rational basis standard, the deciding court necessarily determines that governmental action against a non-suspect class was nonetheless unconstitutional.  That—axiomatic—principle holds true whether the vacated statute discriminated invidiously against homosexual people, *Romer v. Evans*, 517 U.S. 620, 632 (1996) ("even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained.  The search for the link between classification and objective gives substance to the Equal Protection Clause"), prohibited households with one or more non-family members from receiving food stamps, *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 541 (1973) ("I suppose no one would doubt that an association of people working in the poverty field would be entitled to the same constitutional protection as those working in the racial, banking, or agricultural field.  I suppose poor people holding a meeting or convention would be under the same constitutional umbrella as others.") (Douglas, J., concurring), or required certain classes of criminal defendants to pay transcript costs not imposed on others, *Rinaldi v. Yeager*,

384 U.S. 305, 309 (1966) ("the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.") (internal quotation marks omitted); *see also Korematsu v. United States*, 323 U.S. 214, 245 (1944) ("How does the Court know that these orders have a reasonable basis in necessity?  No evidence whatever on that subject has been taken by this or any other court.") (Jackson, J., dissenting).  Thus it is that the difference between "suspect" and "protected" can make all the difference in an equal protection analysis.  While defendants mock plaintiff's distinction between "suspect" and "protected" as focusing on "word choice rather than substance," that derision is misplaced.

Some courts have concededly elided the difference by using the term "protected class" when describing the applicability of Section 1983 to constitutional claims by non-suspect classes.  *See, e.g., Shein v. New York City Department of Education*, 15-CV-04236 (DLC), 2016 WL 676458 (S.D.N.Y. Feb. 18, 2016).  As persuasively explained in *Harry v. McDonald*, No. 21-CV-01355 (SALM), 2022 WL 3576676, at *5 (D. Conn. Aug. 19, 2022), however, that line of cases relies on a misreading of *Kimel v. Florida Board of Regents*, 528 U.S. 62, 83 (2000) identical to defendants' misreading here.  *Shein* and the cases that follow it cite *Kimel* for the proposition that "[a]ge is not a protected class under the Fourteenth Amendment's Equal Protection Clause."  *Shein*, 2016 WL 676458, at *6.  However, "*Kimel* does not support that statement.  [Instead,] *Kimel* states that "age is not a *suspect* classification under the Equal Protection Clause."  *Harry*, 2022 WL 3576676, at *5 (quoting *Kimel*, 528 U.S. at 83) (emphasis added in *Harry*).

24

Therefore, "a plaintiff may bring an Equal Protection claim based on age, but 'because an age classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' . . . This affects the level of scrutiny applied to state action, not the viability of the claim itself." *Id.* (quoting *Kimel*, 528 U.S. at 83). [8]

### b. Balancing Test

"Age-based employment discrimination claims brought pursuant to § 1983 are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)." *Burkhardt v. Lindsay*, 811 F. Supp. 2d 632, 651 (E.D.N.Y. 2011). "Under this familiar approach, plaintiff must first establish a *prima facie* case of discrimination by showing (1) membership in a protected class, (2) qualification for the position held, (3) adverse employment action, and (4) circumstances giving rise to an inference of discrimination." *Wong v. Blind Brook-Rye Union Free Sch. Dist.*, 20-CV-2718 (CS), 2022 WL 17586324, at *15 (S.D.N.Y. Dec. 12, 2022). Once the plaintiff establishes a *prima facie* case of discrimination, "the burden of production shifts to the defendant, who must proffer a

---

[8] Defendants do not argue that the Age Discrimination in Employment Act (ADEA) pre-empts § 1983 as to age discrimination claims. That argument is therefore waived. *See Norton v. Sam's Club*, 145 F .3d 114, 117 (2d Cir. 1998); *see also Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 146 (2d Cir. 2016) ("Preemption [] is a defense that goes to the merits of a claim, not to subject matter jurisdiction."). In any event, "governing case law in the Second Circuit overwhelmingly holds that [Section 1983 equal protection claims based on age] are cognizable." *Weinstein v. Garden City Union Free School Dist.*, 11-CV-2509 (AKT), 2013 WL 5507153, at *20 n.3 (E.D.N.Y. Sep. 30, 2013).

legitimate, non-discriminatory reason for the challenged employment action.  If the

defendant articulates a legitimate, nondiscriminatory reason, plaintiff must then prove

that defendant's articulated reasons are pretextual."  *Burkhardt*, 811 F. Supp. 2d at 651–

52.  "In short, the ultimate burden rests with the plaintiff to offer evidence sufficient to

support a reasonable inference that prohibited [age] discrimination occurred."  *Id.*

In evaluating whether the defendants' proffered non-discriminatory reasons for

the adverse action are pretextual, the standard of review imports rational basis review

as the relevant tier of constitutional scrutiny.  That is, even if the defendants' proffered

explanations for the adverse employment action are pretextual, the ultimate question is

whether defendants had a rational basis to discriminate based on age.  That issue is,

however, a jury question.  *Purdy v. Town of Greenburgh*, 166 F. Supp. 2d 850, 868

(S.D.N.Y. 2001), *on reconsideration in part*, 178 F. Supp. 2d 439 (S.D.N.Y. 2002) ("Because

age is not a suspect class, the Equal Protection Clause only requires a rational basis for

discrimination on the basis of age.  Whether or not defendants had a rational basis to

discriminate on the basis of age is an issue of fact for the jury.") (citing, *inter alia*, *Vance

v. Bradley*, 440 U.S. 93 (1979)).

Here, the only debate is to whether there is information in the record to support

an inference of discrimination.  There is.

The evidence shows that plaintiff had the highest score by what appears to be a

wide margin on the lieutenant's exam.  Pl. 56.1 Stmt. ¶ 10.  And while defendants

proffer a host of plausible alternative explanations for their decision to promote

26

Hartman, Plaintiff has also cited comments made by Isola and Board members that explicitly reference age as a motivating factor in Hartman's promotion.

In his deposition, Isola cited Hartman's proficiency with technology and referenced a joke purportedly made by plaintiff — "old dogs can't use these new kids' toys." Def'ts 56.1 Stmt. ¶¶ 99-100. Isola also explained that being of the same "generation" as plaintiff meant that plaintiff would be expected to be less skilled with technology with Hartman, though Isola cited no specific examples indicating that plaintiff was deficient with technology. Pl. 56.1 Stmt. ¶¶ 21, 23. Similarly, Board members stated that they selected Hartman because they "liked the fact that he was from a younger generation on the force," DE 78, Ex. L 40:13-17, "thought [Hartman] was the right age to fit into the way the Village had done . . . succession over the years," *Id*. Ex. K 26:19-22, and agreed that "the age difference between [] Hartman and [] Isola was a factor" in their "decision to go with [] Hartman," *Id*. Ex. J. 44:25-45:9.

While defendants argue that the relationship between plaintiff and Isola had soured in the past, making any partnership between the two "untenable," Def'ts Br. at 18, that is an issue of fact appropriate for a jury and appears belied by the reality that the two were able to work together as lieutenant and sergeant for years.

In addition, defendants make repeated references to "succession planning," arguing that such a consideration is permissible and is not tantamount to age discrimination. Def'ts Br. at 19. That may be so, but not all of the trustees who mentioned age mentioned succession planning, and because the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of"

27

plaintiff, summary judgment is not appropriate as to the Section 1983 claim. *Bartels*, 97 F. Supp. 3d at 211. This is especially so in the instant case because "[t]he Second Circuit has [] urged courts to exercise caution in the grant of summary judgment where intent is an issue, such as in discrimination cases. *Cravetts v. Fed. Rsrv. Bank of New York*, 03-CV-9726 (HB), 2004 WL 2472122, at *3 (S.D.N.Y. Nov. 3, 2004) (citing *Gallo v. Prudential Residential Svcs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

Defendants also maintain for similar reasons that age cannot have been a but-for consideration in the failure to promote plaintiff. Def'ts Br. at 17-19. However, it is well-established that causation is a question of fact that is usually appropriately resolved by a jury. *Petrozza v. Inc. Vill. of Freeport*, 602 F. Supp. 137, 144 (E.D.N.Y. 1984) ("the court cannot conclude as a matter of law, that plaintiff's alleged constitutional conduct was not a 'substantial' or 'motivating factor' in the defendants' decision to discharge him. This conclusion is buttressed by the well-established principle that questions of causation are generally questions of fact to be submitted to the jury.") (Mishler, J.) (citing Prosser, Law of Torts § 45 (4th ed. 1971)); *see also In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 69 (2d Cir. 2012) ("The question of causation is therefore a jury question.").

Given Isola's deposition testimony and the Board's indication that age was considered in the lieutenant promotion process, as well as the fact that plaintiff scored the highest among the finalists on the lieutenant's exam, summary judgment on the causation issue would be inappropriate.

The Court cautions plaintiff however, that the evidentiary bar at trial will be high because plaintiff must demonstrate not only that the alleged age discrimination occurred and was a but-for cause of his termination, but also that defendants had no rational basis connected to a legitimate government interest as to their failure to promote plaintiff. While that is a question of fact for the jury, it is not a permissive standard. *See Purdy*, 166 F. Supp. 2d at 868.

### c. Individual Defendants[9]

A plaintiff can prove personal involvement by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013).

Plaintiff succeeds on this showing as to Isola, as plaintiff cites specific testimony in which Isola referenced plaintiff's age, and it is also undisputed that police chief recommendations carry high, possibly dispositive, sway with the Board. Together, that

---

[9] To the extent that plaintiff seeks to advance arguments for a municipal liability claim against the Village under § 1983, the Court clearly denied permission for plaintiff to do so in its August 27, 2024 order, which stated that plaintiff "set forth plausible allegations to support a claim of age discrimination under the Equal Protection Clause as to defendant Isola" but that "[t]he remaining age discrimination claims are barred for various pleading and procedural deficiencies." The Court therefore will not consider any arguments pertaining to the putative municipal liability claim.

could permit a reasonable jury to find that Isola participated in the alleged constitutional violation here.

However, plaintiff makes no showing that Coughlan was involved in the lieutenant position in any capacity whatsoever, aside from his recommendation of Hartman, which predated Coughlan's retirement from the QVPD.  And there is similarly no evidence in the record that Coughlan personally considered plaintiff's age in making that recommendation.  As a result, to the extent that plaintiff is attempting to assert the Section 1983 claim against Coughlan, that claim is dismissed.

### d. Qualified Immunity

Qualified immunity protects an official from Section 1983 liability if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotations and citations omitted).  "When evaluating whether qualified immunity applies, the court must engage in a two-part inquiry: 1) whether the constitutional right has been violated; and 2) whether that right was clearly established at the time of the alleged misconduct.  The sequence of this inquiry is left to the discretion of the judge undertaking the analysis." *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 264 (E.D.N.Y. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 230–231, 236 (2009)).

As discussed above, the Court finds that the failure to promote plaintiff because of age discrimination would amount to a constitutional violation and that there is a dispute of material fact as to whether that discrimination occurred.  The remaining

30

question therefore is whether the right was "clearly established at the time of the alleged misconduct." The answer to that question is clearly yes: "a right to be free from disparate treatment in employment on the basis of age [] is clearly established in this Circuit." *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 318 (E.D.N.Y. 2014) (Bianco, J.).

As a result, Isola's request for summary judgment on qualified immunity grounds is denied.

**Conclusion**

Accordingly, the Court GRANTS defendants' motion for summary judgment as to the USERRA (and related state law) claims and the Title VII hostile work environment claim. Those claims are dismissed. The Court also grants defendant Coughlan's motion for summary judgment as to the Section 1983 age discrimination claim. The Court DENIES Isola's motion as to that claim.

**SO ORDERED.**

Dated: Central Islip, New York
       May 13, 2026

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge

31